UNITED STATES of America,

v.

Frank L. BAIRD, Appellant.

No. 95–1202.

United States Court of Appeals,
Third Circuit.

Argued May 18, 1995.

Decided Aug. 11, 1995.

Sur Petition for Rehearing Sept. 12, 1995.

**1214**

Richard S. Wasserbly (argued), Stuart M. Wilder (argued), Pratt, Brett, Thome & Lyons, Doylestown, PA, for appellant.

Walter S. Batty, Jr. (argued), Sonia C. Jaipaul (argued), Joseph T. Labrum, III, Office of the U.S. Atty., Philadelphia, PA, for appellee.

BEFORE: COWEN, LEWIS and SAROKIN, Circuit Judges.

### OPINION OF THE COURT

LEWIS, Circuit Judge.

In this appeal, the appellant, Frank L. Baird ("Baird"), seeks dismissal on double jeopardy grounds of a superseding indictment charging him with violations of federal criminal law. He argues that as a result of a prior administrative forfeiture of monies seized from his residence, he has already been once "punished" for the offenses alleged in the indictment. A subsequent criminal prosecution would, he argues, run afoul of the Double Jeopardy Clause.

To assess the merits of Baird's unusual double jeopardy argument, we must determine whether Baird was "punished" as a result of the administrative forfeiture of money seized from his residence. We conclude that Baird was not "punished" by the administrative forfeiture of seized money never determined to be his. Moreover, assuming, *arguendo*, that the forfeited money belonged to Baird, we further conclude that the administrative forfeiture did not place Baird in a former jeopardy. Therefore, the pending prosecution of Baird for the offenses alleged in the superseding indictment will not subject Baird to double jeopardy. For these reasons, we will affirm the district court's denial of Baird's motion to dismiss.

### I. *Facts and Procedural History*

In April of 1994, law enforcement officials conducted a search of Frank Baird's residence on the suspicion that he was manufacturing and selling 3,4 methylenedioxy-methamphetamine ("Ecstacy"). The search of Baird's residence turned up an elaborate clandestine Ecstacy-manufacturing operation, complete with precursor chemicals, extensive laboratory apparatus, coded formulas for the manufacture of the drug, and stockpiles of already manufactured Ecstacy. In

addition, $2,582 in United States currency was found in the bedroom area of Baird's residence. This money was seized by law enforcement officials.

In a superseding indictment returned in August of 1994, Baird was charged with various drug and drug-related violations of federal criminal law.[1] Prior to the returning of this indictment against him, however, the Drug Enforcement Administration ("DEA") carried out the administrative forfeiture of the $2,582 seized from Baird's residence.

In February of 1995, Baird filed a pre-trial motion to dismiss the superseding indictment on double jeopardy grounds. The district court denied Baird's motion, finding under *United States v. Torres*, 28 F.3d 1463 (7th Cir.1994), and *United States v. Tilley*, 18 F.3d 295 (5th Cir.1994), that initial jeopardy did not attach as a result of the administrative forfeiture of the seized money. This interlocutory appeal followed. We have stayed Baird's trial pending resolution of his appeal.

## II. Jurisdiction and Standard of Review

Subject matter jurisdiction of the district court is based upon 18 U.S.C. § 3231.[2] We have jurisdiction over Baird's appeal under 28 U.S.C. § 1291[3] and the collateral order doctrine announced in *Cohen v. Benefi-*

*cial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See Witte v. United States,* —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (holding that a multiple punishments double jeopardy claim is ripe for appellate review even where the claimant has yet to have been convicted a second time).[4] Our review of the double jeopardy issue in this case is plenary. *See Epstein Family Partnership v. Kmart Corp.*, 13 F.3d 762, 766 (3d Cir.1994) (legal questions are subject to plenary appellate review).

## III. Double Jeopardy Analysis

The Double Jeopardy Clause of the Fifth Amendment[5] has been said to protect against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *See, e.g., North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Schiro v. Farley,* —— U.S. ——, ——, 114 S.Ct. 783, 789, 127 L.Ed.2d 47 (1994). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Schiro,* —— U.S. at ——, 114 S.Ct. at 789. According to the parties, it is the third of these abuses—

---

1. Baird was charged in Count 1 with conspiracy to manufacture and distribute Ecstacy; in Count 2, with the manufacture of approximately 20 kilograms of Ecstacy; in Count 3, with possessing approximately 32 kilograms of Ecstacy with the intent to distribute it within 1000 feet of the Baldwin School located in Bryn Mawr, Pennsylvania; in Count 4, with possessing approximately 32 kilograms of Ecstacy with the intent to distribute it; in Count 5, with attempt to manufacture Ecstacy; in Count 6, with attempt to manufacture amphetamine; in Count 7, with creating a substantial risk of harm to human life while manufacturing and attempting to manufacture Ecstacy; in Count 8, with maintaining a place for the purpose of manufacturing Ecstacy; and in Count 9, with carrying a firearm during and in relation to a drug trafficking crime for which Baird could be prosecuted in a Court of the United States, that is, possession of Ecstacy with the intent to distribute it, as charged in Count 4.

2. 18 U.S.C. § 3231 provides:

   The district courts of the United States shall have original jurisdiction, exclusive of the

courts of the States, of all offenses against the laws of the United States.

3. 28 U.S.C. § 1291 provides:

   The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court.

4. The government has filed a motion to dismiss Baird's appeal in which it argues that the right Baird asserts—the right not to be punished twice for the same offense—can be fully vindicated on appeal at the conclusion of Baird's trial, and that we therefore lack jurisdiction under the collateral order doctrine to hear Baird's appeal. In light of the recently decided *Witte v. United States*, this argument is clearly untenable. We will, therefore, deny the government's motion to dismiss.

5. The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. Amdt. 5.

multiple punishments for the same offense—which is of concern in this appeal.

The Supreme Court has stated that "the primary evil to be guarded against [by the Double Jeopardy Clause] is successive prosecutions: '[T]he prohibition against multiple trials is the controlling constitutional principle.'" *Id.* (citations omitted). Nevertheless, the prohibition against multiple *punishments* for the same offense has "deep roots in our history and our jurisprudence." *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).

> As early as 1641, the Colony of Massachusetts in its "Body of Liberties" stated: "No man shall be twise sentenced by Civil Justice for one and the same Crime, offence, or Trespasse." In drafting his initial version of what came to be our Double Jeopardy Clause, James Madison focused explicitly on the issue of multiple punishment: "No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence." In our case law too, this Court, over a century ago, observed: "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence." *Ex parte Lange,* 85 U.S. 163, 18 Wall 163, 168, 21 L.Ed. 872 (1874).

*Id.* (some citations omitted).

In two recent unanimous decisions, the Supreme Court gave the "no multiple punishments" rule a "breadth of effect it had never before enjoyed." *See Montana Dept. of Rev. v. Kurth Ranch,* —— U.S. ——, ——, 114 S.Ct. 1937, 1957, 128 L.Ed.2d 767 (1994)

(Scalia, J., dissenting). In the first of these, *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Court for the first time announced that *civil* penalties may, in certain instances, constitute "punishment" for double jeopardy purposes. *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901–02. In the second, *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Court relied upon *Halper* to conclude that civil forfeitures undertaken pursuant to 21 U.S.C. §§ 881(a)(4) and (a)(7)[6] constitute "punishment" for purposes of Eighth Amendment Excessive Fines Clause[7] analysis. *Austin,* —— U.S. at ——, 113 S.Ct. at 2812. While *Austin* addressed the meaning of "punishment" in a different context, we agree with the Court of Appeals for the Ninth Circuit: the "only fair reading of the Court's decision in *Austin* is that it resolves the 'punishment' issue with respect to forfeiture cases for purposes of the Double Jeopardy Clause as well as the Excessive Fines Clause." *United States v. $405,089.23 United States Currency,* 33 F.3d 1210, 1219 (9th Cir.1994), *opinion amended on denial of rehearing,* 56 F.3d 41 (9th Cir.1995); *see also* David Smith *Prosecution and Defense of Forfeiture Cases* ¶ 12.10[2], at 12–131 ("The Supreme Court's decision in *Austin v. United States,* makes it clear that *Halper*'s double jeopardy protections do apply to the vast majority of civil forfeiture cases.").

■ According to Baird, together, *Halper* and *Austin* establish that the administrative forfeiture of money under 21 U.S.C. § 881(a)(6)[8] constitutes "punishment" for

---

**6.** These statutes provide for the forfeiture of:

> (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances, their raw materials, and equipment used in their manufacture and distribution]
> . . . .
> (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment. . . .

21 U.S.C. §§ 881(a)(4), (7).

**7.** The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amdt. 8.

**8.** 21 U.S.C. § 881(a)(6) provides for the forfeiture of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter. . . .

purposes of double jeopardy analysis. We do not think *Halper* and *Austin* go so far. While these precedents do suggest that the *civil* forfeiture of money under 21 U.S.C. § 881(a)(6) is "punishment" precluding the meting out of additional punishment for the "same offence" by the "same sovereign" in a subsequent proceeding, *see $405,089.23 United States Currency*, 33 F.3d at 1222 (holding that civil forfeitures of drug proceeds under 21 U.S.C. § 881(a)(6) constitute "punishment" under *Halper* and *Austin* ); *but see Tilley*, 18 F.3d at 300 (holding that civil forfeitures of drug proceeds do *not* constitute "punishment" for double jeopardy purposes), *Halper* and *Austin* do not suggest, let alone establish, that *administrative* forfeiture under § 881(a)(6) amounts to "punishment" relevant to the double jeopardy inquiry. To understand the critical distinction we are drawing between civil and administrative forfeiture, a brief discussion of the nature and process of administrative forfeiture is in order.

▮ The purpose of administrative forfeiture is "to save the government the time and expense of [a] judicial [forfeiture] proceeding in cases where the value of the seized property [is] small." *United States v. United States Currency Etc.*, 754 F.2d 208, 211 (7th Cir.1985).[9] In keeping with this purpose, Federal civil forfeiture statutes allow certain statutorily defined categories of property to be forfeited administratively, i.e., without the filing of a civil forfeiture action in federal district court. *See* David Smith *Prosecution and Defense of Forfeiture Cases* ¶ 6.01, at 6–1.

The administrative forfeiture procedure begins with the seizing agency, in this case the DEA, publishing a notice of seizure and intent to forfeit once a week for at least three successive weeks in a newspaper of general circulation in the judicial district in which the seizure occurred. 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75. The agency is also statutorily required to give personal written notice of the seizure and information on the applicable procedure to any party who appears to have an interest in the seized prop-

erty. 19 U.S.C. § 1607(a). A person may contest an administrative forfeiture, at any time within twenty days of the first publication of the notice of seizure, by filing a claim "stating his [or her] interest therein," and posting a cost bond of $5,000 or ten percent of the value of the property, whichever is less, but not less than $250. 19 U.S.C. § 1608. The proper and timely filing of a claim and cost bond has the effect of stopping the administrative forfeiture process, and forcing the seizing agency to refer the matter to the United States Attorney for the district where the property was seized for the institution of judicial forfeiture proceedings in the ordinary mode prescribed by law. 19 U.S.C. §§ 1603(b) and 1608; 21 C.F.R. § 1316.76(b). Where no person files a claim to the seized property within the statutory period, the agency is authorized to declare the property forfeited. 19 U.S.C. § 1609(b); 21 C.F.R. § 1316.77.

▮ In sum, administrative forfeiture is a procedure available to the government "*only* if the value of the property seized is less than the jurisdictional amount *and* if no claim to the property is filed within the twenty days after the date of first publication of the notice of. seizure." *United States Currency Etc.*, 754 F.2d at 212 (emphasis in the original). Significantly for our purposes, administrative forfeiture is only appropriate in cases where the seized property in question goes unclaimed. Without overstating it, administrative forfeiture is, in reality, a *non-proceeding*—it is merely the consequence of no one having come forward to claim the property seized or contest its forfeitability. With this introduction to administrative forfeiture in mind, we turn now to determine the merits of Baird's double jeopardy claim.

Without adopting a position on the matter, we can certainly understand how a court might conclude that *civil* forfeiture under 21 U.S.C. § 881(a)(6) of drug proceeds constitutes "punishment" for double jeopardy purposes. *See $405,089.23 United States Currency*, 33 F.3d at 1218–22. However, we cannot fathom how an *administrative* forfei-

---

9. Under 19 U.S.C. § 1607(a), administrative forfeiture may be undertaken to effect the forfeiture of as much as $500,000 in United States currency.

ture, under section 881(a)(6), of *unclaimed* alleged drug proceeds could possibly be held to constitute "punishment" in relation to an individual's double jeopardy claim. Any "punishment" resulting from the administrative forfeiture of suspected drug proceeds is punishment only in the abstract, wholly unattached to any specific person, and thus cannot serve as the basis for a double jeopardy claim. This is because administrative forfeiture does not, and, by its very definition, cannot, entail a determination of ownership of the property to be forfeited. All property administratively forfeited is, as a matter of law, "ownerless" property, and the taking of ownerless property "punishes" no one. Because Baird never asserted an interest in the money that was seized from his residence, he cannot now claim to have been punished by its forfeiture.

■ Even were we to assume, *arguendo*, that Baird was the owner of the seized and forfeited money, we would nonetheless affirm the district court's denial of Baird's motion to dismiss because we do not agree that administrative forfeitures place in jeopardy the person whose property is so forfeited.

Succinctly stated, "[y]ou can't have double jeopardy without a former jeopardy[;]" that is, to prevail on a double jeopardy claim, former jeopardy must be shown to have attached. *United States v. Torres*, 28 F.3d 1463 (7th Cir.1994) (*citing Serfass v. United States*, 420 U.S. 377, 389, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975)). In essence, Baird asks us to find that he was placed in jeopardy by the non-judicial administrative forfeiture process undertaken in this case. In rejecting this argument, we are compelled to explain what it means to be placed "in jeopardy."

■ The Double Jeopardy Clause was "designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

The underlying idea, one that is deeply ingrained in at least the Anglo–American

system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him [or her] to embarrassment, expense and ordeal and compelling him [or her] to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he [or she] may be found guilty.

*Id.* at 187–88, 78 S.Ct. at 223. As an aid to the resolution of double jeopardy claims, "courts have found it useful to define a point in criminal [and, post-*Halper*, civil] proceedings at which the constitutional purposes and policies [behind the Double Jeopardy Clause] are implicated by resort to the concept of 'attachment of jeopardy.'" *Serfass*, 420 U.S. at 388, 95 S.Ct. at 1062. In the case of a jury trial, for example, jeopardy is understood as attaching when the jury is empaneled and sworn. *Id.* In the case of a non-jury trial, jeopardy has been said to attach when the court begins to hear evidence. *Id.* In any event, the Court has "consistently adhered to the view that jeopardy does not attach, *and the constitutional [double jeopardy] prohibition can have no application,* until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'" *Serfass*, 420 U.S. at 388, 95 S.Ct. at 1062 (emphasis supplied).

Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier "having jurisdiction to try the question of the guilt or innocence of the accused." Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.

*Id.* (citations omitted). It should be clear from this description of the "attachment" concept that jeopardy does not, and cannot, attach until one is made a *party* to a proceeding before a trier of fact having jurisdiction to try the question of guilt or innocence, and that, until such time, the constitutional double jeopardy prohibition can have no application.[10]

---

**10.** In *Halper* and *Austin,* and, for that matter, in

*Montana Dept. of Rev. v. Kurth Ranch,* —— U.S.

Because Baird failed to contest the forfeiture, he never became a party to any judicial proceeding, criminal or civil. In fact, no judicial proceeding occurred prior to the forfeiture of the money—such being the very nature of administrative forfeiture. Baird has therefore yet to have been placed in jeopardy, or at risk, of a determination of "guilt" and the concomitant imposition of "punishment." Like the double jeopardy claimant in *Torres,* as a non-party to the administrative forfeiture process, Baird was not, and could not have been, placed at risk by that process. And without having been placed at risk of a determination of guilt, jeopardy did not attach as a consequence of the administrative forfeiture. Thus, "neither an appeal nor further prosecution [of Baird would] constitute[ ] double jeopardy." *Torres,* 28 F.3d at 1465 (*quoting Serfass,* 420 U.S. at 389, 95 S.Ct. at 1063).

By asking us to find a double jeopardy violation in his case, Baird is asking, essentially, that we give to the "no multiple punishments" rule a breadth of effect greater even than that given to it by *Halper, Austin* and *Kurth Ranch.* Baird would have us conclude that multiple punishments, *per se,* violate the Double Jeopardy Clause. Even under the above precedents, this just isn't so. Prior to *Halper,* the "no multiple punishments" rule was of rather limited effect— merely proscribing the imposition of those cumulative punishments, for example, fine and incarceration, not authorized by the legislature. *See Halper,* 490 U.S. at 451 n. 10, 109 S.Ct. at 1903 n. 10. As noted above,

*Halper* extended the no-double-punishments rule to civil penalties. *Halper* also "affirm[ed] that [the no multiple punishments rule] demand[s] more than mere fidelity to legislative intent...." *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1957 (Scalia, J., dissenting). Significantly, however, *Halper* did not remove from the double jeopardy claimant's shoulders the burden of establishing a *former jeopardy.* A post-*Halper* double jeopardy claimant in the position of Baird, therefore, cannot prevail *merely* upon a showing that he or she has been once punished for the same offense by the same sovereign. Rather, the post-*Halper* double jeopardy claimant must also show that the initial punishment was meted out during the course of a prior proceeding having the "functional equivalen[ce] of a [prior] criminal prosecution that placed the [claimant] in jeopardy ... 'for the same offence.'" *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1948. In other words, to prevail on his post-*Halper* double jeopardy claim, Baird would have to establish a former jeopardy.[11] Because of the very manner in which the seized property was forfeited, this he was unable to do.

## IV. *Conclusion*

Having concluded that we have jurisdiction to hear this appeal, and having further concluded that Frank Baird was not punished as a result of the administrative forfeiture of the money seized from his residence, and that a former jeopardy did not attach as a result of the administrative forfeiture of money as-

——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the Court did not discuss the attachment threshold issue. We do not take the Court's failure to discuss "attachment" in these cases to signify that it has intended, by implication, to do away with the venerable "attachment" threshold requirement. In each of these three cases, it was clear that the double jeopardy claimant or claimants suffered "punishment" only after having first been made a party to a proceeding before a trier of fact with jurisdiction to decide "innocence" or "guilt." Thus, the "attachment" threshold was, in each of these cases, clearly enough satisfied that no discussion of it was required.

11. The dissent argues that participation in a forfeiture proceeding should not be a precondition to a double jeopardy claim. This argument does away with the multiple jeopardy requirement

and is, therefore, contrary to Supreme Court precedent, *see Serfass,* 420 U.S. 377, 95 S.Ct. 1055 (1975), not to mention the language of the Double Jeopardy Clause itself. We are also troubled by the suggestion, implicit in the dissent, that one can be "punished" in a manner relevant to the Double Jeopardy Clause without having been subjected to any judicial process whatsoever. "Unless the whole doctrine of our system of jurisprudence, both the Constitution and the common law, for the protection of personal rights ... [is] a nullity," *Ex Parte Lange,* 85 U.S. 163, 176, 21 L.Ed. 872 (1874), no one may be "punished" in a manner relevant to the Double Jeopardy Clause without first having been subjected to some form of *judicial* procedure, either in the form of a criminal prosecution or the "functional equivalent" thereof.

sumed for the sake of argument to have been Baird's property, we will deny the government's motion to dismiss this appeal, and affirm the district court's denial of Baird's motion to dismiss the superseding indictment on double jeopardy grounds.

SAROKIN, Circuit Judge, dissenting.

I agree with the majority that this court has jurisdiction over defendant's appeal. Maj. op. at 1215. Accordingly, I too would deny the United States's motion to dismiss the appeal for lack of jurisdiction. On the merits, I conclude that forfeiture pursuant to 21 U.S.C.A. § 881(a)(6) may constitute punishment for purposes of the Double Jeopardy Clause. I respectfully dissent because I believe that double jeopardy can arise following a forfeiture, even where defendant has not participated in the forfeiture proceeding, if the defendant can establish that he was the owner of the forfeited property and that such forfeiture constituted punishment.

## I.

The Fifth Amendment's Double Jeopardy Clause reads: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. The Supreme Court has explained that "the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The instant case involves the third of these protections, a protection which "has deep roots in our history and jurisprudence." *Id.*

In *Witte v. United States,* —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), the Supreme Court recently held that although a petitioner had not yet been twice convicted, his "multiple punishment" claim was ripe for appellate review before trial because "the Double Jeopardy Clause protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being twice put in jeopardy for such punishment."

*Id.* —— U.S. at —— – ——, 115 S.Ct. at 2204–2205. In the instant case, if defendant was punished by the forfeiture, the prospect of a criminal trial and further punishment places him in jeopardy of prohibited multiple punishments. Thus, it is appropriate and required to adjudicate his claim prior to trial and on appeal, before he is subjected to the *risk* of a second punishment for the same offense.

## II.

I turn to the merits of defendant's double jeopardy claim. The question presented is whether forfeiture pursuant to 21 U.S.C.A. § 881(a)(6) (West 1981) constitutes punishment for purposes of the Double Jeopardy Clause. Three recent Supreme Court decisions guide our analysis. *See Department of Revenue v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

In *United States v. Halper,* the Supreme Court considered "whether and under what circumstances a civil penalty may constitute 'punishment' for the purposes of double jeopardy analysis." 490 U.S. at 436, 109 S.Ct. at 1895. The Court fashioned the following test: "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." *Id.* at 448, 109 S.Ct. at 1902. Specifically, the Court held that the Double Jeopardy Clause's prohibition against multiple punishments for the same offense was violated where a defendant who already had been punished in a criminal prosecution was subjected to an additional civil sanction to the extent that the second sanction served the traditional goals of punishment—deterrence and retribution. *Id.* at 449, 109 S.Ct. at 1902.

The Supreme Court recently applied the *Halper* test in *Department of Revenue v. Kurth Ranch, supra.* There, the Supreme Court considered whether a state tax imposed on the possession and storage of dan-

gerous drugs constituted a second punishment for purposes of the Double Jeopardy Clause. The Court began its discussion by noting that although the Amendment's text only mentions harms to "life or limb," it is well settled that the Amendment covers monetary penalties. —— U.S. at —— n. 1, 114 S.Ct. at 1941 n. 1. Recognizing that *Halper* decided that the legislature's description of a statute as civil is not determinative of the Double Jeopardy issue, the Court focused instead on whether the tax had punitive characteristics that subjected it to the constraints of the Double Jeopardy Clause. *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1945. The Court found it indicative of penal intent that the tax was conditioned on the commission of a crime and was exacted only after the taxpayer had been arrested for the precise conduct that gave rise to the tax obligation. *Id.* —— U.S. at ——, 114 S.Ct. at 1947. The Court held that the drug tax was punitive in nature and therefore must be imposed in the first proceeding or not at all. *Id.* —— U.S. at ——, 114 S.Ct. at 1948.

In *Austin v. United States, supra,* the Supreme Court relied heavily on the rationale of *Halper* to determine whether civil forfeiture pursuant to 21 U.S.C.A. §§ 881(a)(4) and (7) (West Supp.1995) constitutes punishment for purposes of the Eighth Amendment's Excessive Fines Clause. *Austin,* —— U.S. at ——, 113 S.Ct. at 2806. However, rather than focusing, as the Court had done in *Halper,* on the goals of the sanction in the individual case, the *Austin* Court reasoned that in the forfeiture context it made more sense to focus on the forfeiture statute as a whole because "[t]he value of the conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7), ... vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." *Austin,* —— U.S. at —— n. 14, 113 S.Ct. at 2812 n.

14. *See also Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1948 (focusing on goals of tax statute as a whole). The Court concluded that forfeitures under §§ 881(a)(4) and (a)(7) are properly considered punishment because: nothing in the sections contradicts the historical understanding of forfeiture as imposing punishment; the sections focus on the owner's culpability by providing for the "innocent owner" defense and by tying forfeiture directly to the commission of drug offenses; and Congress understood the sections as serving the goals of deterrence and punishment. *Austin,* —— U.S. at —— – ——, 113 S.Ct. at 2810–11.

Thus, we know from *Halper* and *Kurth Ranch* that a civil sanction can constitute punishment for double jeopardy purposes and that the proper focus is whether a civil sanction is punitive in nature. Moreover, we know from *Austin* that civil forfeiture pursuant to 21 U.S.C.A. §§ 881(a)(4) and (a)(7) is punishment for purposes of the Excessive Fines Clause.

The Supreme Court's holding in *Austin* that forfeiture pursuant to § 881(a)(4) and (a)(7) constitutes punishment is controlling for purposes of § 881(a)(6) (dealing with monies, negotiable instruments, and securities), the section at issue in this case.[1] The *Austin* Court's historical analysis of forfeiture as punishment and its reliance on the legislative history of § 881 are equally applicable in the instant case. Moreover, like the sections of the forfeiture statute at issue in *Austin,* § 881(a)(6) also includes an innocent owner defense, which focuses on the culpability of the owner in a way that makes it look more like punishment. *See Austin,* —— U.S. at —— – ——, 113 S.Ct. at 2810–11. Section 881(a)(6)'s conditioning of forfeiture on a violation of the Controlled Substances Act is also indicative of Congress' punitive intent. *See id.* —— U.S. at ——, 113 S.Ct. at 2811.

---

1. The following items are subject to forfeiture under § 881(a)(6):

All money, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all money, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C.A. § 881(a)(6) (West 1981).

Further, the legislative history of § 881(a)(6) evidences Congress's intent to punish and to deter. Senator Culver, a sponsor of the legislation, said it would "provide the United States with strong new weapons to ... strike at the profits of illegal drug trafficking." 124 Cong.Rec. S17644 (Oct. 7, 1978). Senator Nunn, also a sponsor of the legislation, explained that "[t]he criminal justice system can only be effective if there is a meaningful deterrent. It is important that the offender be aware of the risk he is running." 124 Cong.Rec. S11965 (July 27, 1978). "We cannot forget that profit, astronomical profit, is the base motivation of drug traffickers." *Id.* By "striking out against the profits from illicit drug trafficking" the enactment of § 881(a)(6) would enhance "the punitive and deterrent purposes of the Controlled Substances Act," which would then "have greater impact on drug trafficking." *Id.*

The specific holding in *Austin* is that civil forfeiture constitutes punishment for purposes of the Excessive Fines Clause. In contrast, this case involves a claim under the Double Jeopardy Clause, yet I believe that *Austin* is controlling for double jeopardy claims as well. Significantly, in *Austin* the Supreme Court relied on *Halper*, which involved the Double Jeopardy Clause, to decide whether a civil sanction constituted punishment for purposes of the Excessive Fines Clause. *See* 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases,* ¶ 12.10[2], at 12–136 (1994) ("The Supreme Court's decision in *Austin v. United States,* makes it clear that *Halper*'s double jeopardy protections do apply to the vast majority of civil forfeiture cases.").

Recently, the Ninth Circuit similarly relied on *Austin* and *Halper* in holding that civil forfeiture pursuant to 21 U.S.C.A. § 881(a)(6) constitutes punishment which triggers the protections of the Double Jeopardy Clause. *United States v. $405,089.23 United States Currency,* 33 F.3d 1210 (9th Cir.1994), *opinion amended on denial of rehearing,* 56 F.3d 41 (9th Cir.1995). *Cf. United States v. Ursery,* 59 F.3d 568 (6th Cir.1995) (holding that civil forfeiture pursuant to § 881(a)(7) followed by criminal conviction for the same offense constituted double jeopardy). The Ninth Circuit reasoned that:

> the only fair reading of the Court's decision in *Austin* is that it resolves the 'punishment' issue with respect to forfeiture cases for purposes of the Double Jeopardy Clause as well as the Excessive Fines Clause. In short, if a forfeiture constitutes punishment under the *Halper* criteria, it constitutes 'punishment' for purposes of both clauses.

33 F.3d at 1219. Thus, the court held that the government violated the Double Jeopardy Clause by obtaining criminal convictions against the defendant and then continuing to pursue the forfeiture action. The court concluded by discussing the practical effect of *Austin* on the government's prosecution of cases:

> Because in the case of statutes like those before us a criminal prosecution and a forfeiture action based on the same offense must now be brought in the same proceeding—that is, the same indictment—the government will often be forced to choose whether to include a criminal forfeiture count in the indictment (and thus forego the favorable burdens it would face in the civil forfeiture proceeding) or to pursue only the civil forfeiture action (and thus forego the opportunity to prosecute the claimants criminally). If, in such cases, the government wishes both to obtain forfeiture and to impose other forms of criminal punishment, it 'will have to rely to a much greater extent on criminal forfeiture.' It is entirely reasonable to put the government to this choice. After *Austin,* the law requires it.

33 F.3d at 1222 (citation omitted). I find the Ninth Circuit's reasoning persuasive.

The government counters that under *Austin* only civil forfeitures that are found to be excessive are to be considered punishment. However, the government misstates the holding in *Austin. Austin* holds that all forfeitures under §§ 881(a)(4) and (a)(7) are meant in part to punish and therefore can run afoul of the Excessive Fines Clause. *Austin,* —— U.S. at ——, 113 S.Ct. at 2812. The *Austin* court left the issue of whether the forfeiture

was constitutionally excessive to the district court in the first instance. *Id.*

The government also contends that application of *Halper's* "rational-relation" test—whether the amount of the sanction appears to be rationally related to the damages caused by the wrongful conduct of the defendant—results in the conclusion that the instant forfeiture of defendant's property does not constitute punishment. However, in *Austin*, the Supreme Court found that the "rational-relation" test was inapplicable in the forfeiture setting, and, instead, looked to the purpose behind the forfeiture statute itself, concluding that forfeiture serves in part to punish. —— U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14. I agree that in the forfeiture context it does not make sense to compare the amount seized with the government's damages and actual costs; the value of the property seized is purely fortuitous, and thus "any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." *Austin*, —— U.S. at —— – ——, —— n. 14, 113 S.Ct. at 2811–12, 2812 n. 14. Moreover, the government has failed to demonstrate on the record how the forfeited property relates to its cost of investigation and prosecution of defendant's case.

Finally, the government argues that to the extent that the forfeiture in the instant case can be considered punishment, it is punishment imposed against the property itself and not against the owner of the property. However, the Supreme Court in *Austin* stressed that it has consistently recognized that *in rem* forfeiture serves, at least in part, to punish the owner. —— U.S. at ——, 113 S.Ct. at 2810. Moreover, the Court made clear that forfeiture of property such as cars and real estate under the current forfeiture statute is dependent not on the criminal nature of the property, but on the illegal use their owners make of them. *Austin*, —— U.S. at —— – ——, 113 S.Ct. at 2810–11. The same reasoning applies to monies forfeited under § 881(a)(6). Therefore, it is the owners who are punished by the forfeiture of such property. *Id.* —— U.S. at ——, 113 S.Ct. at 2811.

The Supreme Court in *Halper* addressed the question of what constitutes punishment for purposes of the Double Jeopardy Clause. 490 U.S. at 436, 109 S.Ct. at 1895. The *Halper* Court announced that the proper inquiry is whether the sanction serves the goals of punishment, i.e. retribution or deterrence. *Id.* at 448, 109 S.Ct. at 1901–02. In *Austin*, the Court held that Congress intended for the forfeiture of property pursuant to §§ 881(a)(4) and (a)(7) to deter and to punish. *See Austin*, —— U.S. at ——, 113 S.Ct. at 2811. Similarly, for reasons previously discussed, § 881(a)(6) was intended to deter and to punish. Therefore, I conclude that forfeiture pursuant to § 881(a)(6) constitutes punishment for purposes of the Double Jeopardy Clause.

### III.

Having decided that forfeiture pursuant to 21 U.S.C.A. § 881(a)(6) constitutes punishment for purposes of the Double Jeopardy Clause, I turn to the question of whether the sequence of the proceedings makes a constitutional difference. In all of the Supreme Court cases previously discussed, the criminal sanction preceded the civil sanction and thus it is the second, civil sanction that has been barred under the Double Jeopardy Clause. By contrast, in the instant case defendant asks us to apply the Double Jeopardy Clause to bar his criminal prosecution.

The Court noted in *Kurth Ranch* that the statute at issue did not raise the question of whether a civil proceeding which is designed to inflict punishment may bar a subsequent criminal proceeding. —— U.S. at —— n. 21, 114 S.Ct. at 1947 n. 21. In his dissent, Justice SCALIA warned that, although the majority confronted the relatively easy task of disallowing a civil penalty after a criminal sanction already had been imposed, cases in which criminal penalties are at stake will demand much more of courts. *Id.* —— U.S. at —— – ——, 114 S.Ct. at 1958–59 (SCALIA, J. dissenting). Justice SCALIA opined that the order of punishment cannot possibly make a constitutional difference. *Id.* —— U.S. at ——, 114 S.Ct. at 1958. I agree.

There is no reason why the sequence of the proceedings should make a difference in this constitutional analysis. In other words,

the holdings in *Halper* and *Austin* apply equally to cases in which the civil sanction precedes the criminal sanction. "[T]he labels 'criminal' and 'civil' are not of paramount importance." *Halper*, 490 U.S. at 447, 109 S.Ct. at 1901. Instead, the critical inquiry remains whether the proceeding constitutes punishment for double jeopardy purposes and whether the defendant is receiving or is at risk of receiving multiple punishments for the same offense. Several other circuits also have held that the order of the proceedings, civil or criminal, does not affect the double jeopardy determination. *See United States v. Furlett*, 974 F.2d 839, 843 n. 2 (7th Cir. 1992); *United States v. Sanchez–Escareno*, 950 F.2d 193, 200 (5th Cir.1991), *cert. denied*, ——— U.S. ———, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992); *United States v. Mayers*, 897 F.2d 1126, 1127 (11th Cir.), *cert. denied*, 498 U.S. 865, 111 S.Ct. 178, 112 L.Ed.2d 142 (1990); *cf. United States v. Ursery*, 59 F.3d 568 (6th Cir.1995) (finding double jeopardy where civil forfeiture preceded criminal prosecution).

## IV.

I next consider whether it makes a difference in the double jeopardy analysis that defendant in the instant case did not participate in the forfeiture proceedings. The district court's ruling is based on the stated rationale that "jeopardy ha[d] not attached pursuant to the administrative forfeiture proceeding," presumably because defendant did not contest the forfeiture. *United States v. Baird*, No. 94–0215, Order, at n. 1 (E.D.Pa. March 14, 1995). Similarly, the majority concludes that administrative forfeiture can *never* constitute punishment for purposes of the Double Jeopardy Clause because: (1) the property is ownerless, i.e. no one has made a claim and/or filed a cost bond, and the taking of ownerless property punishes no one; and (2) administrative forfeiture does not place in jeopardy the person whose property is so forfeited, because it does not involve a judicial proceeding.

I believe that, if a defendant can prove that he was the owner of the property seized, participation in the forfeiture proceeding is not and should not be a precondition to a claim of double jeopardy. A defendant may choose not to participate because the allegations are true, or for fear that a claim of ownership could be utilized against him in the criminal proceeding. For instance, the government alleged in this case that defendant owned the seized property and that the property was used or acquired as a result of a drug-related offense. If the allegations are true, what purpose would be served by defendant's participation in the forfeiture proceeding?

Moreover, a claim of ownership in the forfeiture proceeding conceivably could be used against defendant in the criminal proceeding. Thus, requiring defendant to participate in the forfeiture proceeding as a precondition to a double jeopardy claim would force defendant to choose between waiving his privilege against self-incrimination or waiving his right to assert a double jeopardy violation. The Supreme Court stressed in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), that one constitutional right need not be surrendered in order to assert another. *Id.* at 394, 88 S.Ct. at 976. In *Simmons*, the Court found that an unconstitutional dilemma was created when defendant was required to surrender his Fifth Amendment privilege against self-incrimination in order to establish his standing to assert an arguably valid Fourth Amendment claim. *Id.* The Court resolved the dilemma by holding that: "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial." *Id.* Similarly, in the instant case, we refuse to subject defendant to such an unconstitutional dilemma by requiring him to intervene in the forfeiture proceeding in order to preserve his rights under the Double Jeopardy Clause.

The issue should be whether defendant was the owner, not whether he filed a proper and timely claim of ownership in the forfeiture proceeding. He is punished if his property is forfeited, irrespective of whether or not he participated. Hence, there should be no distinction between administrative and civil forfeiture; in either instance, a defendant must establish ownership and punish-

ment before he can claim double jeopardy. *See also* Smith, *supra,* ¶ 12.10, at 12–141 n. 33.1 ("[A] rule which would require property owners to file a claim and go through the motions of contesting a civil forfeiture merely to preserve a double jeopardy issue has little to recommend it. Tens of thousands of uncontested forfeitures would soon find their way into court.").

The majority relies on *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), in holding that the Double Jeopardy Clause requires that defendant participate in two judicial proceedings. Maj. op. at 1219 n. 11. However, *Serfass,* in contrast to the instant case, did not involve a "multiple punishments" claim and does not stand for the proposition that multiple judicial proceedings are a precondition to all double jeopardy claims. In this case, defendant claims that he was punished by the forfeiture of his monies and that trial on the instant indictment would subject him to multiple punishments for the same offense. The issue is thus whether defendant is at risk of being twice punished for the same offense, not whether defendant is at risk of being twice tried.

Lastly, in *United States v. Torres,* 28 F.3d 1463 (7th Cir.1994), the Seventh Circuit held that the administrative forfeiture of monies did not bar defendant's sentence of imprisonment. I am unpersuaded by the *Torres* decision to the extent that it holds that, unless a defendant participates in the forfeiture proceeding, he cannot claim double jeopardy. Additionally, this case is factually distinguishable from *Torres.* Defendants Torres and Olivares were arrested and their cash seized when they attempted to buy drugs from "sellers" who turned out to be federal agents. *Torres,* 28 F.3d at 1464. The monies were administratively forfeited, and subsequently defendant Torres was convicted in a separate criminal proceeding. *Id.* On appeal, Torres argued that his criminal sentence was barred by the Double Jeopardy Clause. *Id.* In rejecting Torres's double jeopardy claim, the court stressed that it was

not clear who owned the forfeited funds and speculated that "perhaps he [Torres] was just a courier, making the buy on behalf of an undisclosed principal." *Id.* at 1466. In contrast, the ownership of the funds in the instant case is not honestly contested.

## V.

Assuming that defendant can establish that he was the owner of the forfeited property, the *nature* of the property forfeited should affect one's ability to claim double jeopardy. For illustrative purposes, I will divide property subject to forfeiture under § 881(a) into two categories.[2]

The first category includes property which is dangerous and/or illegal *per se* and thus subject to destruction or removal from society. The forfeiture of such property cannot constitute punishment for purposes of the Double Jeopardy Clause because its forfeiture may be characterized as "remedial." This category includes:

all controlled substances which have been manufactured, distributed, dispensed, or acquired, § (a)(1);

all raw materials, products, and equipment which are used in manufacturing any controlled substance, § (a)(2);

all property which is used as a container, § (a)(3);

all books, records, and research, including formulas, microfilm, tapes, and data which are used in violation of this subchapter, § (a)(5);

all controlled substances which have been possessed in violation of this subchapter, § (a)(8);

all listed chemicals, all drug manufacturing equipment, all tableting machines, all encapsulating machines, and all gelatin capsules, § (a)(9);

any drug paraphernalia, § (a)(10); and

any firearm, § (a)(11).

21 U.S.C.A. § 881(a) (West 1983 & Supp. 1995).

2. Moreover, we need not even consider whether confiscating property that a defendant does not have title to, i.e. stolen property, is punishment for double jeopardy purposes. We recognize that the government can immediately confiscate such property and is not required to institute forfeiture proceedings.

The items included in the first category are either illegal *per se* and/or dangerous to society in general or to law enforcement agents in particular. The *Austin* Court conceded that "the forfeiture of contraband itself may be characterized as remedial because it removes dangerous or illegal items from society." —— U.S. at ——, 113 S.Ct. at 2811 (citing *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), which involved forfeiture of firearms). Indeed, Congress recognized that such property is dangerous by providing for its summary forfeiture and destruction. Specifically, section 881(f)(1) (West Supp. 1995) provides that all controlled substances, all raw materials, and any equipment or container subject to forfeiture, which cannot be separated safely from such raw material or product, shall be deemed contraband and summarily forfeited to the United States. Section 881(f)(2) (West Supp.1995) allows the government to destroy such property. *See also* H.R.Rep. No. 101–681(I), 101st Cong., 2d Sess. (1990) *reprinted in* 1990 U.S.C.C.A.N. 6472, 6506 (providing for summary forfeiture and destruction of dangerous substances and the equipment or containers from which these substances cannot be safely separated "because of the dangers they create for law enforcement agents"). Similarly, Congress provided that the selling and interstate transport of drug paraphernalia is illegal, § 863(a) (West Supp.1995), and that drug paraphernalia is subject to seizure, forfeiture, and destruction, § 863(c) (West Supp.1995).

The second category consists of property forfeited pursuant to §§ 881(a)(4), (6), (7), such as boats, planes, cars, real property, and monies, which courts have distinguished as "derivative contraband." Derivative contraband has been defined as articles which are not inherently illegal, but are used in an unlawful manner. *See United States v. Farrell,* 606 F.2d 1341, 1344 (D.C.Cir.1979) (monies used in drug transaction are derivative contraband). The forfeiture of such property may serve as a basis for a double jeopardy claim because, as previously discussed, the forfeiture of property pursuant to §§ 881(a)(4), (6), and (7) is punitive in nature.

## VI.

Finally, I pose the question whether the *source* of the property seized should affect the determination of double jeopardy. Two scenarios illustrate my concerns: In the first scenario, a person acquires a house or car by honest means. If that property is forfeited because it is utilized in connection with criminal activity, the owner is clearly punished. Under such circumstances, a prior or subsequent criminal proceeding based on the same charges, which justified the forfeiture, would implicate double jeopardy. My concern is with the second scenario, in which a defendant acquires property by dishonest means. For instance, monies passed to a person in a drug sale are immediately seized and ultimately forfeited. I have difficulty in concluding that such forfeiture, i.e. the seizure of monies derived from an illegal transaction, bars criminal prosecution for that drug sale. I acknowledge that the monies seized technically are the property of the drug dealer, and, thus, their forfeiture constitutes punishment in the ordinary sense of the word; but I ponder whether it does or should constitute punishment for double jeopardy purposes. The issue is further complicated if the forfeiture involves property acquired from the expenditure of monies illegally obtained—the indirect rather than the direct acquisitions of illegal activity.

Since the majority does not find double jeopardy because of the nature of the forfeiture proceeding, this distinction is not addressed. However, I find it worthy of serious consideration. Moreover, I recognize that if my distinction were to be adopted, a secondary issue would have to be resolved concerning the applicable burden of proof and where to place it.

## VII.

I would vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

Present: SOLVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, McKEE, and SAROKIN, Circuit Judges.

SUR PETITION FOR REHEARING

Sept. 12, 1995

LEWIS, Circuit Judge.

The petition for rehearing filed by appellant, Frank L. Baird, in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges in regular active service, and no judge who concurred in the decision having asked for rehearing, and majority of the circuit judges in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judge Sarokin would have voted for rehearing.