United States Court of Appeals,

Eleventh Circuit.

No. 95-4181.

UNITED STATES of America, Plaintiff-Appellant,

v.

James W. DEAN, Defendant-Appellee.

April 24, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-81606-CR-NCR), Norman C. Roettger, Jr., Chief Judge.

Before KRAVITCH, ANDERSON and BARKETT, Circuit Judges.

KRAVITCH, Circuit Judge:

This appeal raises the question of whether a district court has the authority to modify a portion of a plea agreement relating to the civil forfeiture of property. In this case, after accepting the defendant's plea of guilty, the district court modified the plea agreement. The modification released the defendant from his promise to withdraw his claim to seized funds. The court based its decision to alter the terms of the agreement on the ground that the forfeiture would violate the Eighth Amendment's Excessive Fines Clause. The government argues that the district court lacked the authority to modify the plea agreement. We hold that a district court may modify a plea agreement where a defendant has promised to forfeit property.

I.

On September 18, 1993, James W. Dean, a citizen of the Bahamas, was arrested at West Palm Beach International Airport by United States Customs Service agents for failing to file Customs

Form 4790, Report of International Transportation of Currency or Monetary Instruments.  It is illegal to fail to file Form 4790 when transporting currency in excess of $10,000 out of the United States.  31 U.S.C. §§ 5316(a)(1)(A) and 5322(a) and 31 C.F.R. § 103.23.  Dean was carrying approximately $140,000, which the agents seized from him pursuant to 31 U.S.C. § 5317.

Dean was a fishing boat captain who exported seafood from the Bahamas to the United States.  In his interview with the probation officer who prepared the presentence investigation report ("PSI"), Dean explained that several days before the arrest he had delivered a load of crawfish in West Palm Beach and had been paid by wire transfer to his account at Barnett Bank in Riviera Beach, Florida.  He made a withdrawal of $140,000 so that he could pay approximately 100 of his fishermen in cash when he returned to the Bahamas.  In response to inquiries of the district court and at oral argument before this court, the government stated that it had no evidence that the funds Dean had failed to report were not legitimate proceeds of the sale of fish or that Dean intended to use the money for any illegal purpose.

On February 24, 1994, Dean was notified that Customs would administratively forfeit the entire $140,000 unless Dean filed a claim and cost bond to require Customs to initiate civil forfeiture proceedings.  Dean filed a claim and cost bond on or about March 20, 1994.

On June 13, 1994, in accordance with the plea agreement he entered into with the government, Dean pleaded guilty to attempting to transport currency in excess of $10,000 out of the United

States, in violation of 31 U.S.C. §§ 5316(a)(1)(A) and 5322(a) and 31 C.F.R. § 103.23.  As part of the plea bargain, the government assured Dean that it would not apply to the Immigration and Naturalization Service to exclude Dean from the United States, that it would recommend a sentence at the lower end of the Sentencing Guidelines, and that it would recommend that Dean remain on bond pending sentencing, in exchange for Dean's promise to withdraw his claim for the $140,000 seized by Customs pursuant to 31 U.S.C. § 5317(c).  The effect of this withdrawal would be that the money would go to the government without a forfeiture hearing;  the funds would be administratively forfeited pursuant to 19 U.S.C. § 1607. The district court accepted the plea and ordered a PSI prepared.

During preparation of the PSI, Dean sent a letter to the district court which was transmitted to the probation officer. This letter asked that the court permit the confiscated funds "to be turned over to King & Prince Seafood Co. to partially fulfill my financial obligation to them."

The probation officer calculated a base offense level of six, pursuant to U.S.S.G. § 2S1.3, which was increased by seven levels because of the amount of currency involved.  U.S.S.G. § 2S1.3(a). Because the unreported funds derived from a legal source, Dean's offense level was decreased to six, pursuant to § 2S1.3(b)(2). Dean received a two-level reduction for acceptance of responsibility, for a total offense level of four. Because Dean had no prior convictions, he was assigned a criminal history category of one, entailing a guideline sentencing range from 0-6 months, which made him eligible for a sentence of probation.  Under the

applicable guideline, the fine range for the charged offense was from $250 to $5000.  U.S.S.G. § 5E1.2(c)(1)(3).

At the sentencing hearing, Dean requested the court not to impose a fine because he already had suffered by agreeing to forfeit his claim to the money.  The court then asked the government whether there was any evidence that the proceeds were not from the sale of fish or that Dean intended to use the money for illegal purposes.  When the government stated that it had no evidence that Dean was involved in any illegal activity, the judge expressed concern that the fine was excessive and, as such, unconstitutional.  The judge then instructed the parties to submit briefs addressing whether the Eighth Amendment would prohibit forfeiture in this case.

At a subsequent hearing, the court heard arguments concerning the applicability of the Eighth Amendment to the forfeiture of the currency.  Dean's counsel challenged the government's authority to forfeit the seized funds.  The government argued that although the court could strike the entire plea agreement, the court lacked jurisdiction over the money because there was no forfeiture count in the indictment.  The court replied, "It's all part of the court proceedings now.  You brought it into court this way in the criminal case."  Calling the fine "excessive," the judge mitigated the forfeiture to $5,000 and ordered the government to return the remainder of the funds.  The judge also sentenced Dean to two years' probation.

II.

The government argues on appeal that the district court lacked

the authority to modify the recommended sentence to provide that, in addition to serving two years' probation, Dean would forfeit only $5,000 and that the remainder of the seized funds would be returned to Dean.

A.

The government's first claim is that the district court's modification of the plea agreement violated Rule 11 of the Federal Rules of Criminal Procedure because the plea was made pursuant to Rule 11(e)(1)(C), which permits a judge only to accept or reject an agreement. Dean maintains that the agreement was made under Rule 11(e)(1)(B), and, therefore, was only a recommendation that the judge could modify. Federal Rule of Criminal Procedure 11(e)(1) provides:

> In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:
>
> (A) move for dismissal of other charges; or
>
> (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court;
>
> (C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

We conclude that the plea in this case falls within Rule 11(e)(1)(B). The agreement was not that a specific sentence was the appropriate disposition of the case—an agreement the district court could only accept or reject—but an agreement that the government would recommend to the court that Dean be sentenced at

the lower end of the guideline.

One important distinction between "B" pleas and "A" or "C" pleas is that only "B" pleas may be modified:  "such a recommendation or request shall not be binding upon the court." This is made clear in Rule 11(e)(2), which states, in pertinent part:

> If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.  If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.

Thus, the recommended sentence was not binding on the court.

B.

Although the court was free to modify the sentence, there remains the question of whether the court was free to reject the part of the agreement that required Dean to withdraw his claim to the seized funds.  Rule 11(e)(1)(B) states that the prosecutor's *recommendation* or *request* is not binding on the court;  it does not give the court general authority to alter the terms of the agreement leading up to the recommendation.

Dean's "agreement," however, sought to do more than provide the basis for a recommendation to the judge as to what the appropriate criminal punishment should be;  it also determined the outcome of the government's attempt to forfeit the seized funds. Generally, this is permissible.  The government is entitled to "seek[ ] and obtain[ ] both the full civil penalty and the full range of statutorily authorized criminal penalties in the same

proceeding." *United States v. Halper,* 490 U.S. 435, 450, 104

L.Ed.2d 487, 109 S.Ct. 1892, 1903 (1989). The problem with the

arrangement in this case is that the prosecutor attempted to impose

a punishment[1] in a manner that precluded judicial review. As a

---

[1]The forfeiture provision in this case constituted punishment. The Supreme Court has held that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *United States v. Halper,* 490 U.S. at 448, 109 S.Ct. at 1902.

In determining whether a civil penalty under the False Claims Act constituted punishment, the Court in *Halper* considered whether "the sanction as applied in the individual case serves the goal of punishment." *Id.,* Were *Halper* the last word, we would look at the effect of the forfeiture in this particular case to determine whether it would constitute punishment. In *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), however, the Court had more to say. In that case, the Court did not employ a case-by-case approach in determining whether a forfeiture statute was punishment; rather, it looked at the statute as a whole to determine whether the forfeiture provision under which the government sought to forfeit the defendant's mobile home and auto body shop out of which he sold drugs constituted punishment. The *Austin* Court described the sanction in *Halper* as "involv[ing] a small, fixed-penalty provision, which "in the ordinary case ... can be said to do no more than make the Government whole.' " *Id.* at ---- n. 14, 113 S.Ct. at 2812 n. 14 (quoting *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902) (ellipsis in original). This was contrasted with the forfeitures pursuant to §§ 881(a)(4) and (a)(7), which could "vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." *Id.* In our view, the best reading of *Halper* and *Austin* is that in the forfeiture setting—where any relation between the property seized and the remedial goal of civil forfeiture is purely coincidental—the case-by-case approach of *Halper* is inapplicable; rather, a court should look to the underlying purpose of the statute. *See, e.g., United States v. Perez,* 70 F.3d 345, 348 (5th Cir.1995) (applying a per se rule where real property and conveyances are seized because there is no likely relationship between the value of the forfeited goods and the remedial nature of the forfeiture); *United States v. Ursery,* 59 F.3d 568, 573 (6th Cir.1995) (adopting a per se rule for forfeiture of property used to facilitate the drug

trade), *cert. granted,* --- U.S. ----, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996); *United States v. $405,089.23,* 33 F.3d 1210 (9th Cir.1994) (court must look to the entire scope of statute, not the specific characteristics of property to be forfeited, to determine whether forfeiture constitutes punishment), *amended after denial of reh'g,* 56 F.3d 41, *and cert. granted,* --- U.S. ----, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996).

The distinguishing feature of *Halper* and *Austin* is the extent to which the fine is limited. Where the fine is of a discrete amount, whether that fine is purely remedial depends on whether that fine is rationally related to the damages caused by the claimant. Where the value of forfeited property is completely random, an inquiry into whether the forfeiture is remedial is not necessary; it is almost certain that a portion of the forfeited property will constitute punishment. For this reason, the *Austin* Court saw no need to look at the particular forfeiture involved to determine whether it was remedial. *Austin,* 509 U.S. at ---- n. 14, 113 S.Ct. at 2812 n. 14. Similarly, in *Montana Department of Revenue v. Kurth Ranch,* --- U.S. ----, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), decided after *Austin,* the Court declined to use the test developed in *Halper* to determine whether a tax on dangerous drugs was punishment. Rather, the Court looked at the underlying purpose of the tax to conclude that its imposition constituted punishment. *Kurth Ranch,* --- U.S. at ----, 114 S.Ct. at 1948; *see $405,089.23,* 33 F.3d 1210 (9th Cir.1994), *on amend. denial of reh'g,* 56 F.3d 41, 42 (holding that a categorical approach is compelled by *Kurth Ranch* ). Thus, in determining whether a forfeiture constitutes punishment, we look to the statute as a whole.

In construing 31 U.S.C. § 5317, we assume that "forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment." *Austin,* 509 U.S. at ----, 113 S.Ct. at 2810. Therefore, we consider if there is anything in the "[statutory] provisions or their legislative history to contradict the historical understanding of forfeiture as punishment." *Id.* Under § 5317, the amount forfeitable is determined by the amount of money a person attempts to take from the country. 31 U.S.C. § 5317(c), in relevant part, provides:

> If a report under section 5316 with respect to any monetary instrument is not filed (or if filed, contains a material omission or misstatement of fact), the instrument and any interest in property, including a deposit in a financial institution, traceable to such instrument may be seized and forfeited to the United

States government.

Because the value of the funds forfeited under the statute is completely unrelated to remedial goals, except by mere coincidence, there is a strong presumption that the forfeiture is, in part, punitive. *See United States v. $69,292.00,* 62 F.3d 1161 (9th Cir.1995). This presumption is overcome only where there is a direct correlation between the value of the items seized and the damages caused by the defendant, for instance, where the items seized are contraband. *See Austin,* 509 U.S. at ----, 113 S.Ct. at 2811; *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). The harm addressed by § 5317, however, is depriving the government of the information it seeks, and the amount of the forfeiture in any particular case is only incidentally related to this harm. *See $69,292.00,* 62 F.3d 1161. The money Dean was transporting belonged to him, and it is not a crime to transport one's own money out of the United States. Although § 5317 in part may serve the remedial goal of defraying some of the costs the government has spent in investigation, this is not sufficient to make it purely remedial. Forfeiture under § 5317 is not calculated to reimburse the government for the costs of investigating and prosecuting Dean. Again, this is because the amount forfeited is independent of any costs to the government and is based only on the contingent fact of how much currency is being transported. *Austin,* 509 U.S. at ---- n. 14, 113 S.Ct. at 2812 n. 14; *United States v. Baird,* 63 F.3d 1213, 1223 (3d Cir.1995) (Sarokin, dissenting), *cert. denied,* --- U.S. ----, 116 S.Ct. 909, --- L.Ed.2d ---- (1996).

Congress's intent to punish through § 5317 is further manifested by the fact that forfeiture occurs only as the result of failing to report the funds. 31 U.S.C. §§ 5316, 5317; *see $69,292.00,* 62 F.3d at 1164 (9th Cir.1995); *U.S. v. U.S Currency in the Amount of $145,139.00,* 18 F.3d 73, 78-80 (2d Cir.) (Kearse, J., dissenting), *cert. denied,* --- U.S. ----, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994). "[A] forfeiture under § 5317 primarily visits retribution on the transporter of the funds for not having supplied the desired information, and acts as a potential deterrent." *145,139.00,* 18 F.3d at 80 (Kearse, J., dissenting) (discussing the most common forms of civil remedies and explaining why § 5317 is not a remedial provision).

Finally, we reject the government's argument that this case is controlled by *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972), where the Supreme Court upheld the forfeiture of goods involved in customs violations as a "reasonable form of liquidated damages." *Id.* at 237, 93 S.Ct. at 493. We agree

general rule, acceptance of a defendant's plea agreement prohibits a district court from modifying that agreement. *United States v. Yesil,* 991 F.2d 1527, 1531 (11th Cir.1992) ("[A] district court's discretion is "severely' curtailed once that court accepts a plea bargain.").[2]  However, because the result of an agreement to forfeit property is itself punishment, forfeiture agreements in the context of a "B" plea present an unusual situation.  With a "C" plea, acceptance of the agreement is identical to imposition of punishment;  if the court does not consider the agreement fair, it simply rejects the entire plea agreement.  In a "B" plea, however, punishment may be imposed after acceptance of the agreement.  Were district courts required to accept all forfeiture agreements made

---

with the Ninth Circuit, *United States v. $69,292 in U.S. Currency,* 62 F.3d 1161, that there is a distinction to be drawn after *Austin* between failure to report cases and customs violations cases.  The crime in this case did not involve the smuggling of property out of the United States; rather, the crime was the failure to inform the government that currency in excess of $10,000 was being transported out of the country.  Where a person attempts to avoid paying a duty, the crime committed does bear a correlation to the harm to society:  the greater the value of the property, the greater the lost revenue.  In contrast, because it is legal to take currency out of the United States, the harm that arises when a person deprives the government of information about how much is being removed from the country bears no relationship to the amount that person attempts to remove.

Because the statute does not solely serve a remedial purpose, the forfeiture constitutes punishment. *See Austin,* 509 U.S. at ----, 113 S.Ct. at 2812;  *Halper,* 490 U.S. at 448-50, 109 S.Ct. at 1902.

[2]We note that the Sixth Circuit has held, in the context of an "A" plea, that a district court may not accept a plea while excising the forfeiture provision that was a condition of that plea. *United States v. Skidmore,* 998 F.2d 372 (6th Cir.1993). Because an "A" plea permits no modification of the sentence, it is distinguishable from the "B" plea at issue in the present case.

pursuant to a "B" plea once that court accepted the defendant's plea of guilty, those courts would be compelled to ratify agreements which they consider unjust.[3] Accordingly, we hold that a district judge is permitted to modify forfeiture provisions of a "B" plea agreement when the court determines that the agreed upon forfeiture is unfair to the defendant. To hold otherwise would permit an end-run around judicial review of B-pleas and would deny the district court its proper role of imposing punishment.[4]

## C.

The government's next argument is that the district court lacked jurisdiction over the funds and was therefore without authority to return the money to Dean. The district court would have jurisdiction over the funds, the government contends, only if

---

[3]The Supreme Court has expressed concern with the potential for abuse of forfeiture provisions. *Libretti v. United States,* --- U.S. ----, ----, 116 S.Ct. 356, 365, 133 L.Ed.2d 271 (1995) ("[B]road forfeiture provisions carry the potential for government abuse and "can be devastating when used unjustly.' ") (quoting *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 634, 109 S.Ct. 2646, 2657, 105 L.Ed.2d 528 (1989)). In fact, the Court has stated that "[c]ases involving particular abuses can be dealt with individually by the lower courts when (and if) any such cases arise." *Id.* (quoting *Caplin & Drysdale,* 491 U.S. at 635, 109 S.Ct. at 2657). It is clear that the sentencing judge believed this case—in which the government used the threat of applying to Immigration and Naturalization Service to exclude Dean from the United States for the sole reason that he failed to fill out a form—to be an abuse of the forfeiture provision.

[4]Because we hold that the district court had the authority to modify the amount of the forfeiture, we reject the government's argument that Dean violated the terms of the plea agreement by filing a memorandum of law addressing the constitutionality of the forfeiture. Nor do we construe Dean's letter to the court to be a violation of the agreement. Dean was prepared to waive his claim to the administrative forfeiture of his money had the court so ordered. He should not be penalized for assisting the court in its ruling.

a criminal forfeiture were a part of the indictment.  In such a case, the court would have *in personam* jurisdiction.  *See United States v. Garrett,* 727 F.2d 1003 (11th Cir.1984) (criminal forfeiture is an *in personam* action), *aff'd,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985).  Because the forfeiture was not part of the indictment, the government argues that jurisdiction could exist only with the civil forfeiture court.  A civil forfeiture action is an *in rem* proceeding, and generally jurisdiction would exist only in the court where the action was filed.  The government claims that because no such action had been brought, no court had jurisdiction over the funds at the time of Dean's sentencing.[5]

Federal courts have developed the doctrine of "equitable" or "anomalous" jurisdiction to enable them to take jurisdiction over property in order to adjudicate "actions for the return of unlawfully seized property even though no indictment has been returned and no criminal prosecution is yet in existence." *United States v. Chapman,* 559 F.2d 402, 406 (5th Cir.1977);  *see In re $67,470 in United States Currency,* 901 F.2d 1540, 1545 (11th Cir.1990).  In such circumstances, the only remedy is in equity.  Nevertheless, "[t]he decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint.  Such jurisdiction, therefore, is only appropriate in

---

[5]When Customs begins an administrative forfeiture proceeding against seized property it has initiated an *in rem* action.  Once a person files a claim and cost bond, the administrative forfeiture ceases and the matter is transferred to the appropriate United States Attorney, who institutes civil forfeiture proceedings.  19 U.S.C. § 1608.

exceptional cases where equity demands intervention." *Id.* at 1544.

In *Robinson v. United States,* 734 F.2d 735 (11th Cir.1984), we upheld a district court's order to return property seized during a subsequently dismissed criminal proceeding. Although the government brought a civil forfeiture action prior to entry of a default judgment in favor of Robinson, thus vesting *in rem* jurisdiction in the forfeiture court, the trial court ordered the seized property returned. This court agreed with the district court that "equitable considerations compel the relief here granted." *Id.* at 739.[6]

The principle behind the doctrine of equitable jurisdiction is that the state should not be permitted to deny individuals their property without recourse simply because there is no jurisdiction at law and thus no opportunity for review of government action. This principle applies even where the seizure was lawful.

By entering into a plea agreement that would determine the outcome of the forfeiture action, the government brought the issue of forfeiture before the district court. Were the district judge

---

[6]In *United States v. Castro,* 883 F.2d 1018 (11th Cir.1989), this court refused to allow the use of Fed.R.Crim.P. 41(e) to order the return of property subject to a civil forfeiture action. In the process of holding that Rule 41(e) is applicable only in criminal proceedings, we reaffirmed the power of the court "to fashion a remedy under its inherent equitable authority." *Id.* at 1020 ("Although granting Defendant's Rule 41(e) Motion may be inappropriate here, this Court is not without the power to fashion a remedy under its inherent equitable authority."). In distinguishing *Robinson,* this court noted that in that case the court relied on its "inherent equitable authority" and that the *Robinson* case involved a denial of due process rights. Additionally, in *Castro* the defendant had a remedy at law; the court denied relief because the "[d]efendant ha[d] simply chosen the wrong remedy in the wrong court." *Id.* at 1020.

without power to consider plea agreements to forfeit funds, the Government would be able to enter into agreements that had the effect of imposing unjust and illegal punishments.[7]

The fact that Dean agreed to the punishment does not change our analysis. A defendant's consent to an unjust or illegal punishment should not be ratified by the court. In fact, in the context of sentencing under criminal statutes, the Sentencing Guidelines instruct judges not to accept agreed upon sentences that violate the provisions of the Guidelines. U.S.S.G. § 6B1.2(b)-(c), p.s.; *see Libretti v. United States,* --- U.S. ----, ----, 116 S.Ct. 356, 365, 133 L.Ed.2d 271 (1995) (noting that in the context of a criminal forfeiture the Court has not yet "determine[d] the precise scope of a district court's independent obligation, if any, to inquire into the propriety of a stipulated asset forfeiture embodied in a plea agreement"). In a case such as this one, for the court to exercise its power to prevent the imposition of an unjust or unconstitutional punishment, even one agreed to by the defendant, it is necessary that it be able to take equitable jurisdiction over the seized property.[8]

### III.

To summarize, we hold that the district court had jurisdiction

---

[7]In fact, it was out of concern that the forfeiture would violate Dean's rights under the Eighth Amendment that the district court refused to permit the forfeiture.

[8]If the forfeiture were to violate the Eighth Amendment, then a district court may not permit it. A constitutional violation, however, is not a precondition for the court's exercise of its authority to modify the forfeiture provision. To the extent that the judge has discretion in punishing a defendant, justice and proportionality are relevant considerations.

over the funds and the power to modify the plea agreement. Because the district judge did not abuse his discretion in modifying the plea agreement, we AFFIRM.

ANDERSON, Circuit Judge, concurring specially:

I concur in all of Judge Kravitch's opinion for the court except footnote 1. Because the proposed forfeiture of $140,000 in this case would clearly constitute punishment either under the case-by-case approach utilized in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), or under the categorical approach utilized in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), it is not necessary in this case to decide which approach is correct. I think it is more prudent not to do so. I do not believe that *Austin* mandates use of the categorical approach. Rather, the Court said: "[I]t appears to make little practical difference whether the Excessive Fines Clause applies to all forfeitures under §§ 881(a)(4) and (a)(7) or only to those that cannot be characterized as purely remedial." *Id.,* 509 U.S. at ---- n. 14, at 2812 n. 14. Therefore, although I agree that the proposed forfeiture constitutes punishment, I decline to join footnote 1.