**UNITED STATES of America, Plaintiff,**

v.

**Fred Kenneth BEAMAN, Defendant.**

**No. 1:00–CR–05.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Jan. 16, 2001.

---

Deborah M. Leonard, U.S. Attorney's Office, Fort Wayne, IN, for U.S., plaintiff.

Travis S Friend, Matthew J Elliott, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, for Fred Kenneth Beaman, defendant.

### SENTENCING MEMORANDUM

WILLIAM C. LEE, Chief Judge.

This matter is before the Court upon defendant Fred K. Beaman's (hereinafter "Beaman") objections to his Pre–Sentence Investigation Report and his request for a downward departure under the United States Sentencing Guidelines (hereinafter "U.S.S.G.") § 2S1.3(b)(2) filed on October 30, 2000. Also before the Court is the Government's request for a two level upward departure pursuant to U.S.S.G. § 2S1.3(b)(1). For the following reasons, the Defendant's request for a downward departure and the Government's request for an upward departure shall be DENIED.

### DISCUSSION

For the purposes of this Order, a brief recitation of the facts is necessary. The charges against the Defendant arise from several incidents which occurred in 1995 and 1996. During this time period Beaman received seven checks from Lawhorne Veneer Co. (a logging company conducting business with Beaman) to purchase seven standing timber contracts. On each occasion, Beaman took the checks to the Fairmont State Bank and requested cash in an amount under $10,000 and a bank money order for the remainder of the check amount. The Government alleges that Beaman acted in this manner during the periods of March 1995 and January, February, March, May, June, and July of 1996, with the intent to avoid the transaction reporting requirements. It is alleged that Beaman structured these currency transactions totalling $99,184.00 all in order to avoid the IRS reporting requirements.

Throughout this litigation, Beaman has asserted that he did not intend to avoid the reporting requirements. Instead, he asserts that the contractual scenario proceeded as follows: a Mr. John Bowers (hereinafter "Bowers") entered into contracts with individual farmers to purchase lumber. Beaman then entered into a contract with Bowers to buy these timber contracts. Beaman subsequently sold these contracts to Lawhorne. Beaman alleges that he gave Bowers cash money to pay individual farmers for the timber

which Beaman was to ultimately sell to Lawhorne. According to Beaman, Bowers disappeared and the farmers that had allegedly contracted with Bowers stated that they never entered into contracts with Bowers.

Following an investigation of Beaman's transactions, the Government charged him by way of an information with violations of 31 U.S.C. § 5324(a)(3) and 5324(c)—Structuring Financial Transactions to Avoid IRS Reporting Requirements. On March 9, 2000, the Defendant entered a guilty plea to the charges contained in the information. Following his plea, a Presentence Investigation Report (hereinafter "PSR") was prepared which determined Beaman's offense level to be twelve (12), including a base offense level of 6, plus 6 levels for the total value of funds involved in the offense ($99,000.00). Two (2) levels were deducted for Beaman's acceptance of responsibility, resulting in an adjusted offense level of ten (10). Beaman, however, objected to the PSR because it failed to further decrease his offense level to level 6 pursuant to U.S.S.G. § 2S1.3(b)(2).

On August 23, 2000, following several Motions to Continue, a sentencing hearing was held at which time the objections to the PSR were heard and evidence presented on the issues. The parties were then given time to brief out the issues presented. On October 6, 2000, the Government filed a sentencing brief concerning these issues. On October 30, 2000, the Defendant filed his response to the Government's sentencing brief. On November 14, 2000, the Government filed its reply to the Defendant's response.

At the sentencing hearing, the Government sought to establish, by a preponderance of the evidence, that at the time Beaman entered into the seven banking transactions, the Defendant possessed guilty knowledge that Bowers was engaging in fraud. In its initial brief, the Government asserts that Beaman does not meet the four qualifications for a sentence reduction pursuant to U.S.S.G. § 2S1.3(b)(2). Furthermore, because the

Defendant knew these funds were the proceeds of unlawful activity the Defendant should receive a two (2) level increase pursuant to U.S.S.G. § 2S1.3(b)(1). In response, Beaman contends that he believed the contracts were legitimate and therefore his offense level should be decreased from level ten to level six pursuant to § 2S1.3(b)(2). The court will now address each of these arguments.

## DISCUSSION

U.S.S.G. § 2S1.3(b): *Structuring Transactions to Evade Reporting Requirements* provides as follows:

(b) Specific Offense Characteristics:

(1) If the defendant knew or believed that the funds were proceeds of unlawful activity, or were intended to promote unlawful activity, increase [the offense level] by 2 levels.

(2) If (A) subsection (b)(1) does not apply; (B) the defendant did not act with reckless disregard of the source of the funds; (C) the funds were the proceeds of lawful activity; and (D) the funds were to be used for a lawful purpose, decrease the offense level to level 6.

U.S.S.G. § 2S1.3(b). Applying the provision to this case, Mr. Beaman asserts that he meets all four requirements of § 2S1.3(b)(2) and therefore qualifies for reduction to an offense level of six. In response, the Government contends that Beaman fails to show that he meets §§ 2S1.3(b)(2)(B)–(D). Furthermore, the Government adds that the Defendant had guilty knowledge that the funds were the proceeds of unlawful activity, as defined by § 2S1.3(b)(1), thus making Beaman ineligible under § 2S1.3(b)(2)(A).

In analyzing these evidentiary issues, it is first necessary to establish the burden of proof of the parties as well as the appropriate standard to use in reviewing the evidence presented. While not addressed by the Seventh Circuit, this issue has been specifically addressed by oth-

er circuits. "[Defendant] has the burden of demonstrating that he is entitled to the U.S. Sentencing Guidelines Manual § 2S1.3(b)(2) adjustment by a preponderance of the evidence." *U.S. v. Ahmad*, 173 F.3d 846, 1999 WL 197190, *2 (2nd Cir. 1999) (unpublished opinion). Under Seventh Circuit law, "[any] party seeking the departure from a presumptive guidelines sentence has the burden of proving that he meets the criteria for that adjustment. When the departure is upward, the government has the burden; when it is downward, the defendant has the burden." *U.S. v. Ramirez*, 94 F.3d 1095, 1101 (7th Cir.1996), *see also U.S. v. Chavez–Chavez*, 213 F.3d 420, 422 (7th Cir.2000). Thus, while it has not specifically dealt with the burden of proof concerning U.S.S.G. § 2S1.3(b)(1)–(2), the Seventh Circuit has clearly established that the defendant bears the burden of proof when seeking a downward departure. Additionally, it is clear that the Government will bear the burden of proof in seeking an upward departure.

■ Concerning the evidentiary standard to be met by Beaman and the Government, "[t]he [Sentencing] Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns." Commentary to U.S.S.G. § 6A1.3—*Resolution of Disputed Factors.* Applying this standard to the present case, it is clear that Beaman must demonstrate by a preponderance of the evidence that he meets each of the four criteria necessary for a six-level reduction under § 2S1.3(b)(2). To support its request for a two-level addition pursuant to § 2S1.3(b)(1), the Government must demonstrate by a preponderance of the evidence that the Defendant had scienter that the funds were proceeds of illicit activity.

■ Turning to the Guidelines provisions at issue before the Court, the Court first notes that its interpretation of § 2S1.3(b) is guided by the general principle of statutory interpretation. *Pittway Corp. v. United States*, 102 F.3d 932, 934 (7th Cir.1996). Interpretation of a statute is guided not just by a single sentence or sentence fragment, but by the language of the whole law, and its object and policy. *See Grammatico v. United States*, 109 F.3d 1198, 1204 (7th Cir.1997) (citing *United States v. Boisdore's Heirs*, 49 U.S. (8 How.) 113, 12 L.Ed. 1009 (1850)). When the language of the statute is plain, this court's sole function is " 'to enforce it according to its terms.' " *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). The plain meaning of a statute shall be conclusive unless " 'literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *See id.* at 242, 109 S.Ct. 1026 (quoting *Griffin v. Oceanic Contractors*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973, (1982)).

■ The first issue to review concerns the Government's request for a two-level enhancement of Beaman's offense level pursuant to § 2S1.3(b)(1). As noted above, the Government has the burden of proving that at the time of his banking transactions Beaman knew or believed that Bowers's timber contracts were fraudulent. Guilty knowledge concerning the fraudulent contracts would mean Beaman knew that the funds received from Lawhorne for the fraudulent contracts were proceeds from unlawful activity. Beaman would therefore merit a two-level enhancement under § 2S1.3(b)(1). Additionally, because § 2S1.3(b)(1) would apply, Beaman would not meet § 2S1.3(b)(2)(A), making him ineligible for an offense level reduction under § 2S1.3(b)(2).

Upon review of the evidence presented, the Government has not met its burden of proving that Beaman knew or believed that the funds were derived from an illicit source. While the Government has demonstrated a possible lack of business acumen or caution in the Defendant's business dealings, there is insufficient proof that he

had guilty knowledge of Bowers's fraudulent contracts.

At the August 23, 2000, sentencing hearing Beaman testified that at the time of his transactions with Bowers, he believed the timber contracts to be legitimate legal transactions with farmers. (Transcript p. 31). He stated that at no time during the transactions did he know that they were illegitimate transactions. (Tr. p. 32). Thus, he believed all seven contracts entered into between Bowers and Mr. Lawhorne to be valid, legal contracts. (Tr. p. 40). He discovered their fraudulent nature only after his transaction with Bowers had occurred. (Tr. p. 32). He noted that his belief in the legitimacy of the contracts was based upon past transactions which had been aboveboard. "Mr. Lawhorne got [sic] the timber on every instance that Bowers had called [Beaman]." (Tr. p. 33). Accordingly, he didn't check the contracts because in the past everything that Bowers had told him was a hundred percent correct. (Tr. p. 44).

Although Mr. Beaman contends a lack of knowledge, his business dealings with Bowers were certainly less than cautious. Beaman testified that the nature of his dealings with Bowers were an accepted practice in the timber business in which Beaman had worked for over twenty (20) years. (Tr. p. 27). He stated that he never sold anything to Lawhorne without a contract entered into between himself and Bowers. (Tr. p. 51). Bowers always showed the contracts with the farmers to Beaman, though the Defendant didn't keep copies of these contracts. (Tr. p. 52). Neither does Lawhorne have copies of all of the contracts either; Beaman testified that this was not the type of thing to pass a contract upon. (Tr. p. 53). Beaman testified that after receiving a check from Lawhorne for the timber contract, he then cashed the check, retained the finders fee and gave the remainder to Bowers for distribution to the farmer. (Tr. p. 24). Beaman retained no receipts of the transactions. (Tr. p. 25). The Defendant noted that paying with cash was not unusual because the timber buyers are not local.

He explained that timber owners tend to be suspicious of outsiders and that while a personal check could be bad (i.e.bounce); cash will certainly not be. (Tr. p. 48). Accordingly, owners are more willing to sell when cash is involved.

In its review of the testimony presented, the Court is not persuaded by a preponderance of the evidence that the Defendant had guilty knowledge of the illegal nature of the timber contracts. There is insufficient evidence offered by the Government that Beaman knew that the funds he received to pay Bowers were actually the proceeds of unlawful activity. Thus, Mr. Beaman does not qualify for an offense level enhancement pursuant to § 2S1.3(b)(1). Accordingly, the Court denies the Government's request for this enhancement because the Government does not meet its burden of proof.

▉ In reading § 2S1.3(b)(2), the plain language of the Guidelines provision indicates four conditions for the reduction of Beaman's offense level to level six. The discussion notes in the Commentary indicate that an offense level reduction under subsection (b)(2) is proper only if all four condition are met, including that the funds are used for a lawful purpose. Commentary, U.S.S.G. § 2S1.3(b)(2). Therefore, Beaman is ineligible for reduction under § 2S1.3(b)(2) if he fails to comply with even one of the statutory provisions. In this case, a plain reading of the statute clearly indicates Beaman's failure to comply with at least two of the four provisions. Therefore, the Defendant fails to qualify for an offense level reduction under § 2S1.3(b)(2).

Sections 2S1.3(b)(2)(C) and (D) both refer to the lawfulness of the timber contracts. Under § 2S1.3(b)(2)(C), the funds Beaman structured must have been "the proceeds of lawful activity." U.S.S.G. § 2S1.3(b)(2)(C). Section 2S1.3(b)(2)(D) requires that "the funds were to be used for a lawful purpose." U.S.S.G. § 2S1.3(b)(2)(D). The Defendant has asserted that he did not know that the tim-

ber contracts were unlawful at the time of the transactions. (Tr. p. 40). Thus, he did not know that the funds. he received from Lawhorne to pay for the timber contracts were unlawfully gained, and therefore the Defendant believed the monies were "proceeds of lawful activity." Furthermore, Beaman contends that this money received from Lawhorne was for the purpose of purchasing the timber contracts from Bowers; contracts which Beaman believed to be lawful at the time of the transactions. Accordingly, Beaman believed that these funds "were to be used for a lawful purpose."

The Defendant clearly bases his reading of §§ 2S1.3(b)(2)(C)–(D) on the premise that scienter of the unlawful activity is required under § 2S1.3(b)(2). However, there is no indication in either the statute nor its commentary that this is the case. Indeed, the only requirement of scienter in § 2S1.3(b) is that found in § 2S1.3(b)(1), requiring that the defendant knew or believed that funds were the proceeds of unlawful activity. U.S.S.G. §§ 2S1.3(b)(1). Although the Sentencing Commission expressly made provision in (b)(1) for scienter, it clearly did not make a similar provision in § 2S1.3(b)(2). Furthermore, Beaman provides no evidence to this Court via case law or any other authoritative source which support such an interpretation of § 2S1.3(b)(2).

In interpreting § 2S1.3(b)(2)(C), both parties rely upon dicta from the statement of facts in *United States v. Dean*, 80 F.3d 1535, 1538 (11th Cir.1996). In *Dean*, a fishing boat captain who exported seafood from the Bahamas to the United States failed to file a customs report that he was transporting approximately $140,000.00 in currency into the United States. Pursuant to § 2S1.3(b)(2), Dean's sentence level was ultimately reduced to level six. According to the statement of the facts, "because the unreported funds derived from a legal source, Dean's offense level was decreased to six." *Dean, id.* at 1538. The Defendant asserts that this dicta in *Dean* indicates the "proceeds of lawful activity" prong of § 2S1.3(b)(2)(C) refers to the actual source

of the funds received; in this case Lawhorne Veneer, a legitimate business.

In response, the Government points to statements indicating that the prosecution in *Dean* examined the activity from which the funds were derived and conceded the activity, in that case selling fish, to be a legitimate one. Therefore, because the activity was lawful, the funds constituted the "proceeds of lawful activity." Thus, the Government asserts that *Dean* demonstrates that a "legal source", as referenced in the *Dean* dicta, refers to the legality of the activity from which the funds are derived and not to the provider of funds in the transaction. In this case, "it is undisputed that Lawhorne was deceived and defrauded by the Bowers/Beaman activity." (Gov. Brief p. 2, *citing* Tr. Pp. 4, 14). Accordingly, because the activity ultimately proved illegal, the funds Mr. Beaman received to purchase the timber contracts were not "proceeds of lawful activity" and Mr. Beaman therefore fails to meet the provisions of § 2S1.3(b)(2)(C).

■ Upon review of this issue, both the plain language of the Guidelines as well as the dicta in *Dean* support the Government's interpretation of § 2S1.3(b)(2)(C). Even if the Defendant lacked knowledge of the illegal nature of the transaction, neither the plain language of § 2S1.3(b)(2)(C) nor its Commentary indicates that knowledge of the illegal nature of an activity is a relevant consideration under § 2S1.3(b)(2)(C). It is clear that the activity was fraudulent in nature and as such constituted an unlawful activity. Accordingly, the funds received were not the proceeds of lawful activity. There is no evidence which Mr. Beaman could offer to change the underlying illegal nature of the transaction and, therefore, the Defendant fails to meet his burden of proof pursuant to § 2S1.3(b)(2)(C).

■ Turning to § 2S1.3(b)(2)(D), Mr. Beaman cites *United States v. Bove*, 155 F.3d 44, 48–49 (2nd Cir.1998) to support his proposition that scienter is required

under the provision. In *Bove*, the defendant was convicted of structuring a real estate transaction in order to avoid the currency reporting requirements. While purchasing a property, the defendant made several "under the table" payments (each payment under $10,000) which were not reflected in the purchase documents. In doing so, the seller, co-defendant in the case, was able to commit income tax evasion. *Id.* The district court determined that "because the funds ultimately wound up in a cash form ... they were by definition used for an unlawful purpose." However, the Second Circuit disagreed and interpreted § 2S1.3(b)(2)(D) to "speak in terms of the purpose for which the structured funds were used by the defendant [himself]—whether for a legal or an illegal purpose." *Id.* Thus, because Bove used the funds to complete a legitimate business transaction, he did not use the monies for an unlawful purpose. *Id.* Accordingly, because Mr. Beaman used the structured funds for a lawful purpose, the purchase of timber contracts, he should be eligible for an offense level reduction pursuant to § 2S1.3(b)(2)(D).

In response, the Government correctly notes that the legitimate real estate contract in *Bove* is distinguishable from the fraudulent timber contracts in this case. The Government asserts that because the lumber transactions proved to be fraudulent, the funds used for purchasing them were not used for a lawful purpose. Accordingly, the Government contends that Mr. Beaman does not qualify for a sentence reduction under § 2S1.3(b)(2)(D). The Court notes that from its review of *Bove*, there is no indication that lacking knowledge of the fraudulent nature of an activity will make an unlawful activity lawful. Furthermore, there is no evidence which Mr. Beaman could offer to change the underlying illegal nature of the transaction and, therefore, the Defendant fails to meet his burden of proof pursuant to § 2S1.3(b)(2)(D).

The Court notes that its earlier determination of the Government's failure to prove the Defendant's scienter under § 2S1.3(b)(1) was based upon a failure to prove such knowledge by the preponderance of the evidence. There is simply no evidence which Beaman can present, by a preponderance of the evidence, or by any other standard, which can change the unlawful nature of these contracts. Accordingly, Beaman has failed to demonstrate his compliance with §§ 2S1.3(b)(2)(C)–(D).

■ Because Beaman fails to comply with these two provisions, he is not eligible for an offense level reduction under § 2S1.3(b)(2) and it is unnecessary to review the Defendant's compliance with the fourth provision, § 2S1.3(b)(2)(B). However, the Court briefly notes that the interpretations of these statutes presented by the Defendant and the Government center upon the definition of the "source" of the funds. Section 2S1.3(b)(2)(B) provides that "the defendant did not act with reckless disregard of the source of the funds." U.S.S.G. § 2S1.3(b)(2)(B). The Defendant contends that "source" refers to the party paying the money, in this case Lawhorne Veneer, a legitimate company. Accordingly, because the source was a legitimate company, the Defendant did not act with reckless disregard of the source of the funds by cashing the checks received from Lawhorne.. In contrast, the Government contends that "source" as used in this statute refers to the underlying activity from the money was derived. Although an in-depth analysis of this term is unnecessary, the Court notes the Government's interpretation of "source" as the underlying basis for the funds appears to be an interpretation more favored by a plain reading of the Guidelines and *Dean* than that offered by the Defendant. Mr. Beaman's request for an offense level reduction would therefore fail on this grounds as well.

### CONCLUSION

On the basis of the foregoing, Mr. Beaman's request for an offense level reduction pursuant to § 2S1.3(b)(2) is denied. Furthermore, the Government's request

for an enhancement of Mr. Beaman's sentence pursuant to § 2S1.3(b)(1) is also denied.