925 P.2d 311

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Muavae TUIPUAPUA, also known as Tuipuapua Moananu, Defendant–Appellee.**

**No. 19172.**

Supreme Court of Hawai'i.

Oct. 2, 1996.

Charlotte J. Duarte, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellant.

Theodore Y.H. Chinn, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Plaintiff-appellant State of Hawaiʻi (prosecution) appeals the granting by the First Circuit Court of defendant-appellee Muavae Tuipuapua's motion to dismiss his indictment. On appeal, the prosecution contends that the criminal prosecution against Tuipuapua was not barred by double jeopardy on the basis that: (1) jeopardy does not attach to a forfeiture that is not contested by the defendant; and (2) case law indicates that double jeopardy does not bar prosecution of an indictment following the forfeiture of one's property.[1]

---

1. The prosecution also contends that the criminal prosecution against Tuipuapua was not barred by double jeopardy on the basis that the forfeiture was not based on the same conduct that formed the basis for the indictment. In light of this court's reliance on the analysis set forth in *Unit-*

For the reasons set forth below, we vacate the circuit court's order and remand the case for further proceedings.

## I. BACKGROUND

On April 5, 1994, at approximately 10:45 a.m., a Polynesian male, later identified by photographic line-up as Tuipuapua, went to Dominador Agustin's residence located at 2511D Rose Street, and told Agustin that he was a police officer. Tuipuapua asked to be let into Agustin's residence to discuss a matter regarding Agustin's son, Marlon, and asked repeatedly to be let into Marlon's room to search for a gun. Agustin told Tuipuapua that he would not open the door for him, but would awaken his other son, Donel, to open the door to Marlon's room.

Donel subsequently opened the door to Marlon's room. Tuipuapua then entered the room, conducted a search, and removed an envelope containing cash from the rails of Marlon's bed. Tuipuapua also removed from the room a jewelry box and a plastic bottled water dispenser full of coins and currency in small denominations.

Tuipuapua asked for a bag with which to carry the water dispenser but, after being told that there was none, he took a pillowcase. Tuipuapua left with all of the items, and drove away in a gray Oldsmobile Cutlass vehicle (Cutlass). Tuipuapua at no time was given permission to remove the items from Agustin's residence.

Tuipuapua was arrested two days later, on April 7, 1994, and was subsequently charged with burglary in the first degree, in violation of Hawai'i Revised Statutes (HRS) § 708–810 (1993),[2] and impersonating a law enforcement officer in the second degree, in violation of HRS § 710–1016.7 (1993).[3] Furthermore, after determining that Tuipuapua was the registered owner of the Cutlass, the police seized the Cutlass for forfeiture.

Also on April 7, 1994, the police served Tuipuapua with a notice of seizure for forfeiture pursuant to HRS §§ 712A–7(3) (1993)[4] and 712A–8(a)(i) (1993),[5] in the presence of two witnesses. Tuipuapua nevertheless refused to sign the notice to confirm service.

On April 25, 1994, a complaint was filed in the circuit court charging Tuipuapua with burglary in the first degree[6] and impersonating a law enforcement officer in the second degree.[7]

---

ed States v. Ursery, — U.S. —, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), and our holding that double jeopardy does not bar prosecution of an indictment following the forfeiture of one's property under HRS chapter 712A, see part III.B.2, infra, we believe that it is unnecessary to address whether the forfeiture was based on the same conduct that formed the basis for the indictment for the purpose of a double jeopardy analysis.

2. HRS § 708–810 (1993) provides:
 **Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
 (a) The person is armed with a dangerous instrument in the course of committing the offense; or
 (b) The person intentionally, knowingly, or recklessly inflicts or attempts to inflict bodily injury on anyone in the course of committing the offense; or
 (c) The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.
 (2) An act occurs "in the course of committing the offense" if it occurs in effecting entry or

while in the building or in immediate flight therefrom.

3. HRS § 710–1016.7 (1993) provides:
 **Impersonating a law enforcement officer in the second degree.**
 (1) A person commits the offense of impersonating a law enforcement officer in the second degree if, with intent to deceive, the person pretends to be a law enforcement officer.
 (2) Impersonating a law enforcement officer in the second degree is a misdemeanor.

4. HRS § 712A–7(3) (1993) provides in relevant part:
 Within twenty days after seizure for forfeiture the seizing agency shall make reasonable efforts to give notice of seizure for forfeiture in the manner provided in section 712A–8(a) or 712A–8(b) to all parties known to have an interest in the seized property.

5. See infra note 12.

6. See supra note 2.

7. See supra note 3.

The prosecution subsequently filed a petition for administrative forfeiture of the vehicle on May 17, 1994. On June 20, 1994, the prosecution provided notice of the pending administrative forfeiture by personally serving a copy of the petition upon Tuipuapua through his attorney-in-fact, Susan M. Billianor.[8] However, Tuipuapua failed to file a timely claim to the subject property.[9] By order filed by the Attorney General on September 28, 1994, the Cutlass was forfeited to the State. The Attorney General determined that the facts as alleged in the petition for administrative forfeiture established probable cause to believe that the Cutlass had been "used or intended for use in the commission of, attempt to commit, or conspiracy to commit a covered offense, or which facilitated or assisted in such activity."[10] See HRS § 712A–5(1)(b) (1993).

On June 15, 1995, Tuipuapua filed a motion to dismiss the complaint based on the constitutional double jeopardy protection against multiple punishments for the same offense. A hearing was held on the motion on July 21, 1995. When asked by the trial court whether the parties were prepared to stipulate regarding the notification of the administrative forfeiture, Tuipuapua, through his counsel, stipulated "to the facts as contained in the administrative order as to notice." Through counsel, Tuipuapua also stipulated that he "defaulted" by not responding to the petition for administrative forfeiture. The prosecution stipulated to these facts.

At the hearing, Tuipuapua acknowledged that he was the registered owner of the Cutlass. In addition to arguing that the forfeiture was a prior punishment regarding the burglary charge and that double jeopardy barred the present prosecution on that charge, Tuipuapua contended that he did not receive actual notice of the pending administrative forfeiture because Tuipuapua was incarcerated at the time the Attorney General's notice was published, and he had no access to a newspaper. The prosecution eventually stipulated that Tuipuapua had been incarcerated from April 7, 1994 through July 25, 1994.

The circuit court thereafter issued its order granting Tuipuapua's motion to dismiss indictment based on the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The Court adopts the facts giving rise to the seizure as set forth in the Order Re: Administrative Forfeiture filed on

(a) A reasonably complete description of the property;
(b) A statement of the interest of the petitioner in the property, as owner or interest-holder which may be supported by bills of sale, contracts, or mortgages, or other documentary evidence; and
(c) Facts and circumstances sufficient to show whether the petitioner:
(i) Owns or holds an interest in the seized property as defined by section 712A–1;
(ii) Had any knowledge that the property was or would be involved in any violation of the law;
(iii) Had any knowledge of the particular violation which subjected the property to seizure and forfeiture;
(iv) Had any knowledge that the user of the property had any record, including arrests, except when the person was acquitted or the charges dismissed due to lack of evidence, for the violation which subjected the property to seizure and forfeiture or for any crime which is similar in nature.

**8.** The Attorney General also provided notice of the pending administrative forfeiture through publication on July 17, 1994. See HRS § 712A–10(3).

**9.** HRS § 712A–10 (1993) provides in relevant part:

(4) Persons claiming an interest in the property may file either a petition for remission or mitigation of forfeiture, or a claim and cost or in pauperis bond, but not both, with the attorney general, within thirty days of notice by publication or receipt of written notice, whichever is earlier.
(5) Any person claiming seized property may seek remission or mitigation of the forfeiture by timely filing a petition with the attorney general. A petition for remission or mitigation shall not be used to challenge the sufficiency of the evidence to support the forfeiture or the actions of any government official but shall presume a valid forfeiture and ask the attorney general to invoke the executive power to pardon the property, in whole or in part. The petition shall be signed by the petitioner and sworn on oath before a notary public and shall contain the following:

**10.** The covered offense in question was burglary in the first degree, in violation of HRS § 708–810 (1993). See supra note 2.

September 28, 1994. The ... Cutlass ..., which was the subject of the administrative forfeiture, was used by [Tuipuapua] to drive away after committing a burglary.

2. [Tuipuapua] was determined to be the registered owner of the Cutlass.

3. Notice of the seizure for forfeiture was served on [Tuipuapua] by personal service on April 7, 1994, however, he refused to acknowledge receipt of service in writing.

4. Notice of the pending administrative forfeiture was provided by publication on July 17, 1994.

5. [Tuipuapua] failed to respond within thirty days of receiving notice of the pending administrative forfeiture after notice by publication.

6. The Order states that the property which was subject to forfeiture was "... used or intended for use in the commission of, attempt to commit, or conspiracy to commit a covered offense, or which facilitated or assisted such activity...."

\* \* \* \* \* \*

*CONCLUSIONS OF LAW*

1. Although default judgment was entered against [Tuipuapua] in the administrative forfeiture proceeding, the Cutlass was indisputably his. Accordingly, the fact that default judgment was entered is not automatically dispositive of [Tuipuapua]'s double jeopardy challenge.

2. The administrative forfeiture proceeding clearly resulted in the award of the property to the State. Civil forfeiture sanctions, at least in part, constitute "punishment" under the Double Jeopardy Clause....

\* \* \* \* \* \*

4. Other than the fact that [Tuipuapua] was seen to drive away in the Cutlass, the Order does not indicate that the Cutlass was purchased as a result of illegal funds.

5. Based on the Order, the court concludes that the administrative forfeiture did amount to "punishment" which would trigger application of the double jeopardy prohibition inasmuch as the forfeiture was intended to punish [Tuipuapua] for his un-lawful activity, namely burglary. This purpose is punitive.

(Citations omitted.)

The prosecution thereafter timely appealed.

## II. *STANDARDS OF REVIEW*

■ On appeal, the issue whether a defendant's constitutional right against double jeopardy will not be violated if the defendant is criminally prosecuted following a civil forfeiture is a question of law and thus reviewable under the *de novo* or right/wrong standard. *State v. Baranco,* 77 Hawai'i 351, 351, 884 P.2d 729, 733 (1994) (citing *United States v. Bernhardt,* 831 F.2d 181, 182 (9th Cir. 1987)). *See also State v. Toyomura,* 80 Hawai'i 8, 15, 904 P.2d 893, 900 (1995).

■ "Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Miller,* 4 Haw.App. 603, 606, 671 P.2d 1037, 1040 (1983). *See also Amfac, Inc. v. Waikīkī Beachcomber Inv. Co.,* 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992). Thus, "[a] [conclusion of law] is not binding upon the appellate court and is freely reviewable for its correctness." *State v. Bowe,* 77 Hawai'i 51, 53, 881 P.2d 538, 540 (1994) (citation omitted).

■ We review the trial court's findings of fact under the clearly erroneous standard. *Dan v. State,* 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994). Under this standard, "[a] finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Id.*

## III. *DISCUSSION*

A. *Jeopardy does not attach to a forfeiture that is not contested by the defendant.*

The prosecution first contends that the criminal prosecution against Tuipuapua was

not barred by double jeopardy on the basis that jeopardy did not attach when Tuipuapua abandoned the Cutlass by failing to file a timely claim pursuant to HRS § 712A–10(4).[11]

Before a person known to have an interest in the property is able to file a timely claim pursuant to HRS § 712A–10(4), HRS §§ 712A–10(2) and 712A–10(3) require that the State provide notice of pending forfeiture and of intention to forfeit property. HRS § 712A–10 (1993) provides in relevant part:

> (2) The prosecuting attorney shall give notice of pending forfeiture by making reasonable efforts to serve a copy of the petition in a manner provided in section 712A–8(a) or 712A–8(b) on all persons known to have an interest in the property, together with instructions for filing a claim and cost or in pauperis bond, or a petition for remission or mitigation.[12]
>
> (3) The attorney general shall give notice of intention to forfeit the property administratively by publication in the manner provided in section 712A–8(c).[13]

(Brackets added.)

■ Upon thorough review of the record before us, it is apparent that the prosecution satisfied the notice requirements set forth in HRS §§ 712A–10(2) and 712A–10(3). First, at the July 21, 1995 hearing, Tuipuapua stipulated to the fact that he was served, through personal service upon his attorney-in-fact, with notice of the pending administrative forfeiture.[14] In addition, Tuipuapua stipulated that the Attorney General provided notice by publication on July 17, 1994. Although Tuipuapua argued in support of his motion to dismiss that the notice by publication was defective on the bases that he was incarcerated on the publication date and that he had no opportunity to read the newspaper, HRS § 712A–10(3) does not mandate that *actual* notice be given to all persons known to have an interest in the property. It is therefore apparent, as the trial court found, that Tuipuapua received sufficient statutory notice.

■ Having determined that the prosecution satisfied its notice requirements, we note that several courts have held that, even after providing proper notice to the defendant as discussed above, jeopardy does not attach to a forfeiture that is not contested by the defendant. *See United States v. Baird,* 63 F.3d 1213, 1218–19 (3d Cir.1995), *cert. de-*

11. *See supra* note 9.

12. HRS § 712A–8 (1993) provides in relevant part:

> **Notice of forfeiture proceedings.** Unless otherwise provided, whenever notice is required under this chapter it shall be given in one of the following ways:
> (a) If the owner's or interest-holder's name and current address are known:
> (i) By personal service; or
> (ii) By mail;
> (b) If the owner's or interest-holder's interest is required by law to be on record with a state or federal agency in order to perfect·an interest in the property, but the person's current address is not known, by mailing a copy of the notice by certified mail to any address on the record[.]

13. HRS § 712A–8 (1993) further provides in relevant part:

> **Notice of forfeiture proceedings.** Unless otherwise provided, whenever notice is required under this chapter it shall be given in one of the following ways:
> * * * * * *
> (c) If the owner's or interest-holder's address is not known, and is not on record pursuant to

paragraph (b), or if the person's interest is not known, by publication in one issue of a newspaper of general circulation in the county in which the seizure occurs.

14. Hawai'i Rules of Civil Procedure (HRCP) Rule 4(d) provides in relevant part:

> **Same: Personal Service**.... Service shall be made as follows: (1) Upon an individual other than an infant or an incompetent person (A) by delivering a copy of the summons and of the complaint to him personally or in case he cannot be found by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or (b) by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.
>
> Although HRCP Rule 4(d) specifically relates to the personal service of a complaint and summons, we believe that the rule also provides guidance as to the personal service of a seizure for forfeiture under HRS chapter 712A. We therefore rely on HRCP Rule 4(d) in holding that there was adequate notice provided in the instant case as a result of the personal service upon Tuipuapua's attorney-in-fact.

nied, —— U.S. ——, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996), *reh'g denied,* —— U.S. ——, 116 S.Ct. 1371, 134 L.Ed.2d 536 (1996); *United States v. Cretacci,* 62 F.3d 307, 310–11 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2528, 135 L.Ed.2d 1052 (1996); *United States v. Arreola–Ramos,* 60 F.3d 188, 192–93 (5th Cir.1995). We agree with the reasoning in these cases.

 A statutory forfeiture "is a proceeding *in rem.*" It is not a proceeding against any person. An individual must therefore make a claim to the property at a forfeiture proceeding in order to become a party to it. *Baird,* 63 F.3d at 1219; *Arreola–Ramos,* 60 F.3d at 192–93. Once he or she becomes a party in the forfeiture proceeding, due process requires the government to afford notice and meaningful opportunity to be heard before seizing property subject to forfeiture. *United States v. James Daniel Good Real Property,* 510 U.S. 43, ——, 114 S.Ct. 492, 492, 126 L.Ed.2d 490 (1993).

 Tuipuapua failed to file a timely claim for the forfeited property at issue and was therefore never subjected to jeopardy. By failing to contest the forfeiture, Tuipuapua never became a party to the proceeding and effectively renounced any interest in the property forfeited. *See Cretacci,* 62 F.3d at 310–11. As a result, there has been no judicial determination that the property was his; consequently, he cannot claim that the forfeiture punished him. *See id.; Arreola–Ramos,* 60 F.3d at 192. In these circumstances, without punishment, there is no former jeopardy. Even if Tuipuapua later asserted that the forfeited property in a claim was his, a late claim is irrelevant as "the critical time for making a claim of ownership had already passed." *Cretacci,* 62 F.3d at 310. Accordingly, we hold that jeopardy did not attach in the instant case because Tuipuapua failed to file a timely claim for the forfeited property at issue.

**B.** *Because the forfeiture sanctions under HRS §§ 712A–12 and 712A–10 are not intended as punishment and are not essentially criminal in character, the double jeopardy clause is not applicable.*

Even if Tuipuapua's claim were to be deemed timely, the prosecution also contends that the double jeopardy clauses of the fifth amendment to the United States Constitution and article I, section 10, of the Hawai'i Constitution do not bar prosecution of an indictment following the forfeiture of the defendant's property.

 One of the bedrock principles of United States criminal law is contained in the double jeopardy clause of the fifth amendment to the United States Constitution, which guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The double jeopardy clause has been made applicable to the states through the fourteenth amendment due process clause. *Benton v. Maryland,* 395 U.S. 784, 793, 89 S.Ct. 2056, 2061, 23 L.Ed.2d 707 (1969). The State of Hawai'i, in addition, provides a similar double jeopardy clause in article I, section 10 of its Constitution.[15] The basic concept of double jeopardy is relatively easy to comprehend: the government cannot prosecute or punish an individual for the same criminal offense more than once. R. Nakatsuji, *State v. Lessary: The Hawai'i Supreme Court's Contribution to Double Jeopardy Law,* 17 U. Haw. L.Rev. 269 (1995).

The double jeopardy clause

has been held to bar retrial of criminal charges after acquittal, *Smalis v. Pennsylvania,* 476 U.S. 140 [106 S.Ct. 1745, 90 L.Ed.2d 116] (1986), and to bar a second trial for the same offense. *Blockburger v. United States,* 284 U.S. 299 [52 S.Ct. 180,

---

15. Article I, section 10 of the Hawai'i Constitution (1978) provides:

No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury or upon a finding of probable cause after a preliminary hearing held as provided by law, ex-

cept in cases arising in the armed forces when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy; nor shall any person be compelled in any criminal case to be a witness against oneself.

76 L.Ed. 306] (1932). It can preclude retrial after prosecutorial misconduct causes a mistrial, *United States v. Dinitz*, 424 U.S. 600 [96 S.Ct. 1075, 47 L.Ed.2d 267] (1976), and it can also preclude the imposition of a harsher sentence on a defendant after a successful appeal. *North Carolina v. Pearce*, 395 U.S. 711 [89 S.Ct. 2072, 23 L.Ed.2d 656] (1969).

E. Neafsey, *Parallel Proceedings Considerations in New Jersey: The Application of the Fifth Amendment's Double Jeopardy Clause*, ALI–ABA 1, 3 (Nov. 2, 1995).

 In other words, "[d]ouble jeopardy protects individuals against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." [16] *Toyomura*, 80 Hawai'i at 16, 904 P.2d at 901 (citing *State v. Lessary*, 75 Haw. 446, 454, 865 P.2d 150, 154 (1994)). *See also Loui v. Board of Medical Examiners*, 78 Hawai'i 21, 25, 889 P.2d 705, 709 (1995). "The fundamental purpose of the double jeopardy clause is to protect an accused from being forced to defend against repeated attempts to exact one or more punishments for the same offense and applies with equal force whether the first prosecution resulted in a conviction or an acquittal." *People v. Smith*, 275 Ill. App.3d 844, 212 Ill.Dec. 200, 202–03, 656 N.E.2d 797, 799–800 (1995).

It is apparent that the first two protections under the double jeopardy clause do not apply in the instant case. Tuipuapua is not facing a second *prosecution* after a prior conviction or acquittal. Instead, the issue is whether we are faced with the third protection under the double jeopardy clause, *i.e.*, multiple punishments for the same offense.

### 1. *United States v. Ursery*

In support of his position, Tuipuapua cites to cases such as *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989), and *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), for the proposition that civil forfeitures always constitute punishment for double jeopardy purposes. However, in an opinion recently rendered in June 1996, the United States Supreme Court, in distinguishing *Halper* and *Austin*, as well as *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), held that:

> [i]n sum, nothing in *Halper, Kurth Ranch*, or *Austin* purported to replace our traditional understanding that civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause. Congress long has authorized the Government to bring parallel criminal proceedings and civil forfeiture proceedings, and this Court consistently has found civil forfeitures not to constitute punishment under the Double Jeopardy Clause. It would have been quite remarkable for this Court both to have held unconstitutional a well-established practice, and to have overruled a long line of precedent, without having even suggested that it was doing so. *Halper* dealt with *in personam* civil penalties under the Double Jeopardy Clause; *Kurth Ranch* with a tax proceeding under the Double Jeopardy Clause; and *Austin* with civil forfeitures under the Excessive Fines Clause. None of those cases dealt with the subject of this case: *in rem* civil forfeitures for purposes of the Double Jeopardy Clause.

*United States v. Ursery*, —— U.S. ——, ——, 116 S.Ct. 2135, 2147, 135 L.Ed.2d 549 (1996).

In *Ursery*, the Supreme Court began its analysis by pointing out that since the birth of this country, "Congress has authorized the Government to seek parallel *in rem* civil forfeiture actions and criminal prosecutions based upon the same underlying events." *Id.* at ——, 116 S.Ct. at 2140. The Court

---

**16.** Regardless of the order of the civil and criminal proceedings, the double jeopardy clause will bar the second sanction if both the first and second sanctions are deemed punishment. *United States v. Tilley*, 18 F.3d 295, 298 n. 5 (5th Cir.), *reh'g denied*, 22 F.3d 1096 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994) (citing *United States v. Sanchez–Escareno*, 950 F.2d 193, 200 (5th Cir.1991), *cert. denied*, 506 U.S. 841, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992)).

also pointed out that, in a long line of cases, it had consistently concluded that the double jeopardy clause does not apply to such *in rem* civil forfeitures. *Id.* The Court singled out three of those cases for discussion: *Various Items of Personal Property v. United States,* 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (per curiam); and *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984).

*Various Items* was one of the first cases to consider the relationship between the double jeopardy clause and civil forfeiture. In *Various Items,* the defendant corporation had been convicted of criminal violations before there had been a forfeiture of its property because of federal law violations. The criminal violations grew out of the same transactions that formed the basis for the forfeiture. The *Various Items* Court held that the double jeopardy clause was inapplicable to civil forfeiture actions. The Court reasoned that:

> [this] forfeiture proceeding ... is *in rem.* It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution[,] it is the wrongdoer in person who is proceeded against, convicted, and punished. The forfeiture is no part of the punishment for the criminal offense. The provision of the Fifth Amendment to the Constitution in respect of double jeopardy does not apply.

*Various Items,* 282 U.S. at 581, 51 S.Ct. at 284 (citations omitted).

The Court in *Various Items* distinguished between *in rem* civil forfeitures and *in personam* civil penalties in the form of fines. The Court concluded that civil penalties could, in some circumstances, be punitive in character and would therefore be barred by a prior conviction for a criminal offense involving the same transactions. In contrast, the Court concluded that *in rem* civil forfeitures could never be considered punitive. *Id.* at 580, 51 S.Ct. at 283.

Continuing with its analysis of the double jeopardy trilogy, the *Ursery* Court noted that the Court did not consider another double jeopardy case involving a civil forfeiture until *One Lot Emerald,* some forty years after *Various Items.* In *One Lot Emerald,* the defendant was acquitted of smuggling jewelry into this country. He subsequently intervened in a proceeding to forfeit the jewelry as contraband. Rejecting the owner's double jeopardy claim, the Supreme Court in *One Lot Emerald* held that the forfeiture was not barred on the basis that it neither involved two criminal trials nor two criminal punishments. *One Lot Emerald,* 409 U.S. at 235, 93 S.Ct. at 492. Reaffirming the principles in *Various Items,* the Court determined that the forfeiture was a civil sanction and not a criminal punishment. In reaching this conclusion, the Court noted that the forfeiture provisions had been codified separately from parallel criminal provisions. *Id.* at 236, 93 S.Ct. at 492.

*One Assortment* was the last in the trilogy of double jeopardy cases that the *Ursery* Court discussed. In *One Assortment,* the owner of certain firearms was acquitted of dealing with firearms without a license. The government thereafter filed a forfeiture action against the firearms under 18 U.S.C. § 924(d), alleging that the firearms were used or intended to be used in violation of federal law. The *One Assortment* Court held that the prior criminal proceeding did not bar the forfeiture. In reaching this conclusion, the Supreme Court set forth a two-part test for determining whether a given *in rem* forfeiture qualifies as punishment: (1) whether Congress intended the forfeiture to be criminal and punitive, on the one hand, or civil and remedial, on the other; and (2) whether the scheme was so punitive in purpose or effect as to negate Congress' intent to establish a civil remedial mechanism. *One Assortment,* 465 U.S. at 363, 104 S.Ct. at 1105.

Utilizing the two-part test as a framework for analysis, the *Ursery* Court had little trouble concluding that Congress intended the forfeiture statutes in question, *i.e.,* 21 U.S.C.

§§ 881(a)(6) [17] and 881(a)(7) [18] and 18 U.S.C. § 981(a)(1)(A), [19] to be civil proceedings. To support its conclusion, the Court first pointed to the procedural mechanisms Congress had established for enforcing forfeitures under these two statutes. The Court noted that the forfeiture proceedings were *in rem*, that Congress intended forfeiture under the statutes in question to be *in rem*, and that the property—rather than the defendant—was the target of the proceeding. *Ursery*, —— U.S. at ——, 116 S.Ct. at 2147. The Court also noted that 19 U.S.C. § 1607 provided that actual notice of the impending forfeiture was not necessary under either forfeiture statute when the government could not identify any party with an interest in the seized property. Furthermore, in recognizing that 19 U.S.C. § 1615 governed both forfeiture statutes, the Court noted that the section provided that once the government has shown probable cause that the property is subject to forfeiture, the burden of proof shifts to the claimant. Because both procedures were distinctly civil, the Supreme Court discerned a clear Congressional intent that the forfeiture sanction be civil, rather than criminal. *Id.* at ——–——, 116 S.Ct. at 2147–48.

**17.** 21 U.S.C. § 881(a) (1984) provides in relevant part:

> **Subject property.** The following shall be subject to forfeiture to the United States and no property right shall exist in them:
> \* \* \* \* \* \*
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this . title, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

**18.** 21 U.S.C. § 881(a) (1996) provides in relevant part:

> **Subject property.** The following shall be subject to forfeiture to the United States and no property right shall exist in them:
> \* \* \* \* \* \*
> (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole or any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more

The *Ursery* Court "stopped short of holding that *in rem* civil forfeiture is per se exempt from the Double Jeopardy Clause." *State v. Predka*, No. 194/95–1045, 1996 WL 411863, at *10, —— N.W.2d ——, —— (Iowa July 24, 1996). Instead, the Court held that Congress' action in (1) designating the forfeiture as civil and (2) providing that the action proceed *in rem* "establishes a presumption that it is not subject to double jeopardy." *Ursery*, —— U.S. at —— n .3, 116 S.Ct. at 2148 n .3. Nevertheless, the Court cautioned that "where the 'clearest proof' indicates that an *in rem* civil forfeiture is 'so punitive either in purpose or effect' as to be equivalent to a criminal proceeding, that forfeiture may be subject to the Double Jeopardy Clause." *Id.*

In the second step of its two-step analysis, the *Ursery* Court found that "there is little evidence, much less the 'clearest proof' that we require, suggesting that forfeiture proceedings under 21 U.S.C. §§ 881(a)(6) [20] and 881(a)(7), [21] and 18 U.S.C. § 981(a)(1)(A), [22] are so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." *Id.* at ——, 116 S.Ct.

> than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any. act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

**19.** 18 U.S.C. § 981 (1996) provides in relevant part:

> (a)(1) Except as provided in paragraph (2), the following property, real or personal, is subject to forfeiture to the United States:
> (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 5313(a) or 5324(a) of title 31, or of section 1956 or 1957 of this title, or any property traceable to such property. However, no property shall be seized or forfeited in the case of a violation of section 5313(a) of title 31 by a domestic financial institution examined by a Federal bank supervisory agency or a financial institution regulated by the Securities and Exchange Commission or a partner, director, or employee thereof.

**20.** *See supra* note 17.

**21.** *See supra* note 18.

**22.** *See supra* note 19.

at 2148 (citations omitted). The Court noted that the two forfeiture statutes at issue "are, in most significant respects, indistinguishable from those reviewed, and held not to be punitive, in *Various Items, Emerald Cut Stones,* and [*One Assortment* ]." *Id.*

The *Ursery* Court nevertheless viewed the two forfeiture statutes in question as having certain punitive qualities. However, the Court concluded that the statutes "serve important nonpunitive goals." *Id.* For example, "[r]equiring the forfeiture of property used to commit federal narcotics violations encourages property owners to take care in managing their property and ensures that they will not permit that property to be used for illegal purposes." *Id.*

Moreover, the *Ursery* Court looked to four other considerations to support its conclusion that the forfeiture statutes at issue were civil, rather than criminal, proceedings. First, the Court noted that, historically, it had not considered *in rem* civil forfeiture as punishment, in the sense that the Court had understood the term under the double jeopardy clause. *Id.* at ——, 116 S.Ct. at 2149.

Second, the two forfeiture statutes at issue did not require the government to establish scienter in order to establish that the property was subject to forfeiture. A trial court could subject the property to forfeiture, even though no party had filed a claim to it and the government had not shown any connection between the property and a particular person. Although both statutes contained an "innocent owner" exception, the Court did not think such a provision, without more indication of an intent to punish, was "relevant to the question whether a statute [was] punitive under the Double Jeopardy Clause." *Id.*

Third, although both statutes could be said to serve a deterrent purpose, the Court noted that it had "long ... held that this pur-

pose may serve civil as well as criminal goals." *Id.*

Finally,

though both statutes [were] tied to criminal activity, ... this fact [was] insufficient to render the statutes punitive. It is well settled that "Congress may impose both a criminal and a civil sanction in respect to the same act or omission." By itself[,] the fact that a forfeiture statute has some connection to a criminal violation is far from the "clearest proof" necessary to show that a proceeding is criminal.

*Id.* (citations omitted).

### 2. *Application of the Ursery Two–Step Analysis*

Turning to HRS chapter 712A, we likewise employ the *Ursery* two-step analysis to determine whether forfeitures under the Hawaiʻi Omnibus Criminal Forfeiture Act constitute punishment under the double jeopardy clause.[23]

▋ We initially address the first prong of the test employed in *Ursery, i.e.,* whether the Hawaiʻi Legislature intended administrative forfeitures and judicial *in rem* forfeiture proceedings under HRS chapter 712A to be civil or criminal, to the facts of the case before us. Similar to federal forfeiture statutes in *Ursery,* we hold that the Hawaiʻi legislature intended such forfeitures under HRS chapter 712A to be civil proceedings. The legislature's intent in this regard is most clearly demonstrated by the procedural mechanisms it established for enforcing such forfeitures. For example, HRS chapter 712A expressly provides that (1) a forfeiture "shall be ordered by a court on an action *in rem* [,]" HRS § 712A–12(1) (1993), and "judicial *in rem* forfeiture proceedings are in the nature of an action *in rem* and are governed by the rules of civil procedure whether

23. In 1988, the Hawaiʻi Legislature enacted the Hawaiʻi Omnibus Criminal Forfeiture Act, paralleling the federal civil forfeiture statutes. Department of the Attorney General, *Proceedings Under the Hawaiʻi Omnibus Criminal Forfeiture Act Annual Report Fiscal Year 1994,* at 5. Similar to the federal civil forfeiture statutes, the Hawaiʻi Omnibus Criminal Forfeiture Act, which is codified in HRS chapter 712A, allows forfeiture of certain property for many aspects of criminal activity, from burglary, murder, and promoting a dangerous, harmful, or detrimental drug, to laws relating to pornography and prostitution.

For the purpose of this opinion, we limit our analysis of the Hawaiʻi Omnibus Criminal Forfeiture Act to administrative forfeitures, authorized by HRS § 712A–10, and judicial *in rem* forfeiture proceedings, authorized by HRS § 712A–12.

brought in the criminal or civil division of the circuit court, unless a different procedure is provided by law," HRS § 712A–12(2) (1993);[24] (2) the burden of proof is, in the first instance, on the prosecution to show probable cause that the property is subject to forfeiture and then shifts to the claimant, HRS § 712A–12(7) (1993); (3) forfeiture is not dependent upon a prosecution for, and conviction of, a criminal offense; and (4) forfeiture proceedings are separate and distinct from any related criminal action. In addition, court-appointed counsel at the government's expense is not available in forfeiture proceedings. See HRS § 802–1 (1993).[25]

Other procedural mechanisms governing forfeitures under HRS chapter 712A also indicate that the legislature intended such proceedings to be civil. Forfeitures under the chapter are governed by HRS § 712A–8,[26] which provides that actual notice of the impending forfeiture is unnecessary when the owner's or interest-holder's address is neither known nor on record, or when the person's interest is not known. In addition to establishing the *in rem* nature of the action, HRS chapter 712A authorizes a summary administrative proceeding for forfeiture of items valued less than $100,000, as to which notice of intention to forfeit the property may be effected by publication.[27] See HRS § 712A–10(3) (1993).

Other considerations that we deem relevant to the question whether a proceeding is criminal also tend to support a conclusion that administrative forfeitures and judicial *in rem* forfeiture proceedings under HRS chapter 712A are civil. First, in light of *Various Items, supra, Emerald Cut Stones, supra,* and *One Assortment, supra,* and the long tradition of federal statutes providing for a forfeiture proceeding following a criminal prosecution, it is absolutely clear that an *in rem* civil forfeiture has not historically been regarded as punishment as we have understood that term under the double jeopardy clause. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2149. Second, there is no requirement in HRS chapter 712A that the state demonstrate scienter in order to establish that the property is subject to forfeiture; indeed, the property may be subject to forfeiture even if no party files a claim to it and the prosecution never shows any connection between the property and a particular person. *See id.* Although HRS § 712A–5(2) contains "innocent owner" exceptions,[28] we likewise do not

---

24. HRS § 712A–9 (1993) provides that "[t]he prosecuting attorney shall determine whether it is probable that the property is subject to forfeiture and, if so, shall initiate administrative or judicial proceedings against the property[.]" In the instant case, it is clear that an administrative forfeiture was instituted by the prosecuting attorney. However, for the purpose of determining whether forfeitures under HRS chapter 712A were intended to be criminal and punitive, or civil and remedial, we analyze both administrative forfeitures under HRS § 712A–10, and judicial *in rem* forfeitures under HRS § 712A–12.

25. HRS § 802–1 (1993) provides in relevant part:

**Right to representation by public defender or other appointed counsel.** Any indigent person who is (1) arrested for, charged with or convicted of an offense or offenses punishable by confinement in jail or prison or for which such person may be or is subject to the provisions of chapter 571; or (2) threatened by confinement, against the indigent person's will, in any psychiatric or other mental institution or facility; or (3) the subject of a petition for involuntary outpatient treatment under chapter 334 shall be entitled to be represented by a public defender.

26. *See supra* note 12.

27. Furthermore, HRS § 712A–11 (1993), which discusses judicial forfeiture proceedings in general, provides that "[a]n acquittal or dismissal in a criminal proceeding shall not preclude *civil proceedings under this chapter.*" HRS § 712A–11(6) (1993) (emphasis added).

28. HRS § 712A–5(2) (1993) provides in relevant part:

* * * * * *

(b) No property shall be forfeited under this chapter to the extent of an interest of an owner, by reason or any act or omission established by that owner to have been committed or omitted without the knowledge and consent of that owner;

* * * * * *

(d) No conveyance is subject to forfeiture under this section by reason of any act or omission established by the owner thereof to have been committed or omitted without the owner's knowledge or consent; and

(e) A forfeiture of a conveyance encumbered by a bona fide security interest is subject to the interest of the secured party if the secured party neither had knowledge of nor consented to the act or omission.

think that such a provision, without more indication of an intent to punish, is relevant to the question whether a statute is punitive under the double jeopardy clause. *See id.* Third, HRS chapter 712A may fairly be said to serve the purpose of deterrence; however, we also recognize that deterrence may also serve civil as well as criminal goals. *See, e.g., id.; One Assortment,* 465 U.S. at 364, 104 S.Ct. at 1105. Finally, though HRS § 712A–5 is tied to criminal activity, this fact is insufficient to render the statute punitive. *See Ursery,* —— U.S. at ——, 116 S.Ct. at 2149. It is well settled that the legislature may impose both a criminal and a civil sanction with respect to the same act or omission. *Id.*

■■■ Accordingly, we hold that administrative and judicial *in rem* forfeitures, under HRS §§ 712A–10 and 712A–12 respectively, are remedial civil sanctions, rather than criminal punishments.

■■■ We now turn to the second aspect of our inquiry: whether the proceedings at issue in the present appeal are so punitive in fact as to persuade us that the forfeiture proceeding may not legitimately be viewed as civil in nature, despite legislative intent to the contrary. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148 (citing *One Assortment,* 465 U.S. at 365, 104 S.Ct. at 1106). "Only the clearest proof" that the purpose and effect of the present forfeiture are punitive will suffice to override the legislature's manifest preference of a civil sanction. *See One Assortment,* 465 U.S. at 365, 104 S.Ct. at 1106 (quoting *United States v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980)). There is little evidence, much less the required "clearest proof," suggesting that the present forfeiture proceedings were so puni-

tive in form and effect as to render them "criminal" in nature.

While HRS chapter 712A may perhaps have certain punitive aspects, it serves important nonpunitive goals. HRS § 712A–5(1)(b), under which the Cutlass in the present case was forfeited, provides for the forfeiture of all "[p]roperty [which is] used or intended for use in the commission of, attempt to commit, or conspiracy to commit a covered offense, or which facilitated or assisted such activity[.]" HRS § 712A–5(1)(b) (1993). The forfeiture of the Cutlass certainly serves as an "encouragement" of property owners "to take care in managing their property" and tends to ensure "that they will not permit that property to be used for illegal purposes."[29] *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148. *See One Assortment, supra* (stating that forfeiture discourages unregulated commerce in firearms). "In many circumstances, the forfeiture may abate a nuisance." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148 (citing *United States v. 141st Street Corp.,* 911 F.2d 870 (2d Cir.1990) (forfeiting apartment building used to sell crack cocaine), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991)).

We therefore hold that double jeopardy does not bar prosecution of the indictment.

## IV. *CONCLUSION*

Accordingly, we vacate the circuit court's order granting the motion to dismiss the indictment and remand the case to the circuit court for further proceedings.

---

**29.** HRS § 712A–4 (1993) provides:

> **Covered offenses.** Offenses for which property is subject to forfeiture under this chapter are:
> (a) All offenses which specifically authorize forfeiture;
> (b) Murder, kidnapping, gambling, criminal property damage, robbery, bribery, extortion, theft, *burglary,* money laundering, promoting a dangerous, harmful, or detrimental drug, or commercial promotion of marijuana, which is chargeable as a felony offense under state law;
> (c) The manufacture, sale, or distribution of a controlled substance in violation of chapter 329, promoting detrimental drugs or intoxicating compounds, promoting pornography for minors, or promoting prostitution, which is chargeable as a felony or misdemeanor offense, but not as a petty misdemeanor, under state law; and
> (d) The attempt, conspiracy, solicitation, coercion, or intimidation of another to commit any offense for which property is subject to forfeiture.

(Emphasis added.)